Stewart, J.
Defendant poses the following four questions to this court and insists that they should be answered in such a way that defendant will be entitled to a final judgment or at least to a new trial:
Question No. 1: “Has the Legislature ever created a civil action for acceleration of death?”
Question No. 2: “Does not plaintiff have the burden of proving that the accelerating accident is the proximate cause of the death?”
Question No. 3: “Does not plaintiff have the burden of proving the length of the acceleration period and what damages flow only therefrom?”
Question No. 4: “Can an impassioned and excessive verdict be cured by the granting of a huge (two-thirds) remittitur?”
The present case is an action under Section 10509-166, General Code, which is known as the “wrongful death statute.” It reads in part:
‘ ‘ When the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued, the corporation which, or the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *.”
In respect to question No. 1, defendant strenuously contends that under the foregoing statute there can be no action for a death which has not been caused but has only been accelerated by a wrongful act.
The jury found that decedent’s death was not di *212 roctly caused by the accident but was directly and proximately accelerated by reason thereof.
Since the statute gives rise to an action only where the death is caused by wrongful act, it would seem at first, blush that defendant’s argument is highly plausible. However, upon analysis, it is obvious that in every case of wrongful death the death has only been accelerated by the wrongful act.
Since all humans are mortal, a death by wrongful act simply cuts down the time by which death would have occurred in any event. Therefore, it logically follows that, even though the immediate cause of death in the present case was cirrhosis of the liver and myocarditis, if the injury suffered by decedent directly and proximately caused him to die sooner than he would otherwise have, his death was caused by the wrongful act of defendant.
It is true that defendant argues that his evidence shows that the decedent was on the point of death at the time his accident occurred, but the fact remains that he had been working for the nine months of the year in which he died until the time of the injury; that his work was the driving of a heavy truck; and that he had earned approximately $60 a week.
The authorities are numerous and overwhelming in support of the proposition that, even though one dies from disease, if his death was directly accelerated by a tortious act, such act caused the death.
This court has not before passed upon this question in reference to an action under the wrongful death statute. However, in a case arising under the Workmen’s Compensation Act, which provides in part (Section 1465-82, G-eneral Code): “In case the injury
causes death within the period of two years * * * the benefits shall be in the amount and to the persons following,” this court said:
*213 “Under this provision the plaintiff in an appeal case from a denial of award by the Industrial Commission, for death of a workman or employee has to establish that the injury was the proximate cause of the death,, or was the proximate cause of the acceleration of death.” Weaver v. Industrial Commission, 125 Ohio St., 465, 466, 181 N. E., 894.
In other jurisdictions there have been many decisions upon this question with reference to wrongful death statutes similar to the Ohio statute, and that recovery may be had under such statutes for an acceleration of death seems well established.
In Industrial Service Co. v. State, ex rel. Bryant, 176 Md., 625, 6 A. (2d), 637, a decedent who had a heart condition was injured in a controversy with a bill collector and thereafter died from the heart condition. Recovery was allowed under the wrongful death statute for acceleration of death.
In Meekins v. Railway Co., 134 N. C., 217, 46 S. E., 493, the court held that where a decedent’s death resulted from a disease but was hastened by injury, recovery may be had for the death, but evidence tending to show that the decedent would have died in a short time from natural causes was competent on the issue of damages.
In Shaffer v. Southern Bell Telephone & Telegraph Co., 184 La., 158, 165 So., 651, the court held that where a decedent suffering from a mild cardiac disorder was-injured and thereafter died from heart disease, evidence that the injury accelerated the disease was sufficient to charge the defendant for the death.
In Strode, Curator, v. St. Louis Transit Co., 197 Mo., 616, 95 S. W., 851, a case where decedent was injured in a collision and died from consumption, the court held that an instruction that there could be no-recovery if the injuries received by decedent only *214 hastened the death and were not the cause altogether was improper and erroneous.
An earlier Missouri case, Jackson v. St. Louis Iron Mt. & Southern Ry. Co., 87 Mo., 422, 56 Am. Rep., 460, holding contra was expressly disapproved in the case of MacDonald v. Metropolitan Street Ry. Co., 219 Mo., 468, 118 S. W., 78.
The New York Court of Appeals, in McCahill, Admx., v. New York Transportation Co., 201 N. Y., 221, 94 N. E., 616, held that where a decedent had suffered an injury to his leg but his death resulted from delirium tremens alleged to have been the result of a pre-existing alcoholic condition, nevertheless if the injury precipitated, hastened and developed the delirium tremens, the injury was the proximate cause of death and recovery should be allowed therefor.
The same principle was enunciated in Louisville & Nashville Rd. Co. v. Chamblee, 171 Ala., 188, 54 So., 681 (1910); Hammel v. Southern Ry. Co., 113 Miss., 344, 74 So., 276 (1917); Nicoll v. Sweet, Admx., 163 Iowa, 683, 144 N. W., 615 (1913); and Wiemert, Admx., v. Boston Elevated Ry. Co., 216 Mass., 598, 104 N. E., 360 (1914).
By reason and authority we must conclude that an injury which directly and proximately accelerates a death gives rise to an action under the wrongful death statute even though the immediate cause of death was disease.
In the instant case, the answers to the two interrogatories can be reconciled upon the theory that the jury found that decedent died of disease as an immediate cause, but that the death was directly accelerated by the injury, which caused a quiescent condition of disease to become active.
This court has held that it is the duty of a court to harmonize answers to interrogatories if possible but *215 that if they are in direct conflict with each other and it is impossible to harmonize them they cancel each, other and should be disregarded by the court. Klever v. Reid Bros. Express, Inc., 151 Ohio St., 467, 86 N. E. (2d), 608.
In answer to defendant’s first question we hold that recovery may be had under Section 10509-166, General, Code, for a death directly and proximately accelerated, by an injury resulting from a tortious act.
In answer to defendant’s second question, plaintiff does have the burden of proving that the death was directly and proximately accelerated by the accident.
In the present case the jury so found in answer to a special interrogatory, and, although defendant strenuously argues that the evidence is overwhelming to the-contrary, there was evidence supporting that finding. Both the trial court and the Court of Appeals, whose-duty it is to weigh the evidence, found against defendant upon this issue, and since this court ordinarily does not weigh evidence we cannot disturb those findings.
In answer to defendant’s third question we hold that plaintiff does not have the burden of proving the length of the period by which decedent’s life was shortened and what damages flow only therefrom.
A plaintiff undoubtedly has the right in a wrongful death ease to produce evidence as to the age, health, and activity of the decedent and other facts to show that a decedent would have lived a long time had his-death not been accelerated by the .wrongful act, and a defendant has the right in mitigation of damages to show the age, weakness, diseased condition, impaired' earning power or lack of activity of decedent or any other facts tending to prove that the decedent would: have lived only a very short time had his death not been so accelerated.
*216 In the case of Meekins v. Railway Co., supra, the court said:
“The evidence tending to show that the intestate would in any event have died in a short time from natural causes was competent upon issue of damages, but was utterly immaterial upon that of negligence.”
In Edwards v. Warwick, 317 Mass., 573, 59 N. E. (2d), 194 (1945), in an opinion by the Supreme Judicial Court of Massachusetts appears the following statement:
“The evidence was unsatisfactory, but in view of testimony of persons intimate with the deceased from which the jury could have found that there was a marked deterioration in her general health immediately following the accident from which she did not recover upon leaving the hospital and which continued until her death, and in view of the definite opinion of the medical witness to whom we have already referred (an opinion which appears to have been unqualified and founded upon Ms personal knowledge of the whole case, notwithstanding Ms repeated use of the word may in explaining it, Commonwealth v. Russ, 232 Mass., 58, 73-74), we think that the jury could find that the accident had caused the death of the testatrix at an earlier date than that at which it would have come about from other causes. Such finding is not precluded by the fact that no witness attempted to testify by just how much death had been accelerated. Recovery may be had where there is substantial ground for a finding that negligence has caused death to occur when it did, even though it would have occurred at no very remote date from other causes.”
The foregoing authorities are based upon reason because evidence that a death wrongfully caused would have occurred in the near future in any event would be in mitigation of damages and, therefore, should logically be produced by a defendant.
*217 In a case such as the present one the court should fully charge the jury as to the consideration it should give to the length of the period by which the decedent’s life was shortened and what damages flow only therefrom, and the court’s charge in this case was somewhat scant upon this proposition. However, the court did say:
“You must be fair to both parties. And if you find she [decedent’s widow] was pecuniarily hurt by his death, and if the children were pecuniarily hurt by Larrissey’s death, you will fix the amount, which shall be compensation only. In that connection consider his condition and all of the evidence relating thereto.’’
Since no request was made for a more complete charge upon the question of decedent’s condition, and its effect upon the length of the period by which the death was accelerated, we cannot say that the scantiness of the charge was prejudicial.
We come now to the last question posed by defendant as to whether an impassioned and excessive verdict can be cured by the granting of a huge remittitur.
The trial court in passing upon the motion for a new trial said:
“There is no doubt in this court’s mind that the verdict was excessive. We do not believe that it wras due to passion and prejudice; at least we can discern nothing that would show passion and prejudice except that the verdict is too high. We query, therefore,, what caused the jury to render such an excessive verdict. Of course this is more or less conjecture on the part, of the court. It is perfectly possible that the jury, knowing that the decedent earned $60 a week multiplied the number of weeks in one year and multiplied that by the number of years they believed he would live, and reached the sum of $20,000. The jury did not consider, perhaps, that he may not work en *218 tirely fifty-two weeks in each year, and that it would cost the family at' least half to keep the decedent, and that the verdict therefore could not be for the amount of his earnings. They also ought to consider that he might use more than half for his own maintenance since he drank some alcoholic liquors. The amount, of course, was not before the jury, but the fact that he did drink was before the jury.
“* * * The jury is compelled to think and give its best judgment in practically all cases of this nature since verdicts in unliquidated cases cannot be reduced to a mathematical certainty.
“We realize further that in the instant case the remittitur is high, but we have considered that if a judgment had been found for the plaintiff for the sum above mentioned, to wit, $7,000, that this court would not have disturbed it in any way. Consequently we feel that even though the court itself may not have given a verdict even of $7,000, if it had given anything, nevertheless such a verdict under all the circumstances would have been sustained.”
In its journal entry disposing of the motion for new trial, the trial court found that the verdict was excessive, but that it was not given under the influence of passion or prejudice.
Defendant strenuously contends that the verdict in the present case was fantastically high and that the enormous remittitur by the trial court was a clear indication that the verdict was rendered under the influence of passion or prejudice. If a verdict is excessive and appears to have been given under the influence of passion or prejudice the only recourse is the granting of a new trial, since the prejudice resulting cannot be corrected by remittitur. Jones v. Macedonia-Northfield Banking Co., 132 Ohio St., 341, 7 N. E. (2d), 544.
*219 However, it has long been the rule in Ohio, and it is the majority rule in the nation, that if a verdict in an action for unliquidated damages is excessive, but not appearing to have been influenced by passion or prejudice, the court may, with the assent of plaintiff, reduce the verdict by remittitur to any amount warranted by the evidence.
In the case of Pendleton Street Rd. Co. v. Rahmann (1872), 22 Ohio St., 446, it was held:
“Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the remittitur of the excess the condition of refusing to grant a new trial. ’ ’
In that case, the verdict was for $10,000 and the court put the plaintiff to an election to remit $5,000 or submit to a new trial. The plaintiff electing to take the remittitur, the court overruled the motion for a new trial.
From that time the almost uniform holdings of this court have been to the same effect, and, unless there is some episode in the trial, such as language of the trial court in its charge to the jury deliberately calculated to engender sympathy, as in the case of Toledo, Columbus & Ohio River Rd. Co. v. Miller, 103 Ohio St., 17, 132 N. E., 156, or some other event such as highly improper argument by counsel tending to inflame a jury, the question whether a verdict has been given under the influence of passion and prejudice or whether it is merely excessive and can be cured by remittitur is largely left to the discretion of the trial court.
The ruling in the Rahmann case has been approved many times by this court. Ohio Traction Co. v. Shearer, 97 Ohio St., 332, 120 N. E., 878; Capital City Dairy *220 Co. v. Amicon, 99 Ohio St., 443, 126 N. E., 925; Silver-glade v. Von Rohr, 107 Ohio St., 75, 140 N. E., 669; Alter v. Shearwood, a Minor, 114 Ohio St., 560, 151 N. E., 667; Chester Park Co. v. Schulte, Admr., 120 Ohio St., 273, 166 N. E., 186.
At least twice, judgments on verdicts which have come to this court without remittitur have been reduced by this court as a condition for affirmance. Sibila v. Bahney, 34 Ohio St., 399; Bartlebaugh v. Pennsylvania Rd. Co., 150 Ohio St., 387, 82 N. E. (2d), 853.
The case of Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S., 69, 32 L. Ed., 854, 9 S. Ct., 458, was an action to recover damages for conversion of cattle. In the trial court there was a verdict for plaintiff in the amount of $39,958.33. The trial court remitted $22,-833.33 as a condition for overruling defendant’s motion for a new trial.
The defendant in that case contended that the fantastic size of the remittitur demonstrated that the verdict was governed by passion or a deliberate disregard of the facts by the jury.
The Supreme Court of the United States, in an opinion by Mr. Justice Harlan, said:
“This court is not, however, authorized to assume from the mere fact that $22,833.33 was remitted, that the court below believed that the jury were governed by prejudice, or wilfully disregarded the evidence. * * * Whether the verdict should be entirely set aside upon the ground that it was excessive, or was the result of prejudice, or of a reckless disregard of the evidence or of the instructions of the court, or whether the verdict should stand after being reduced to such amount as would relieve it of the imputation of being excessive, are questions addressed to the discretion of the court, and cannot be reviewed at the instance of the party in whose favor the reduction was made.”
*221 This court cited that case with approval in the case of Fromson & Davis Co. v. Reider, a Minor, 127 Ohio St., 564, 568, 189 N. E., 851, where in the opinion it is stated:
“A court may consider a verdict to be so excessive as to require a remittitur; but the amount of the verdict, while it may furnish a suspicion of passion or prejudice, is not of itself conclusive proof of that fact. ’ ’
It is said in the opinion in the Chester Park case:
“The principal argument made against reducing a verdict of a jury is that it results in substituting the judgment of the court for that of the jury in matters where it is the settled policy of our jurisprudence that the amount should be left to the determination of a jury. That argument has been so often answered in the negative by the courts of Ohio that it must be said that the subject should now be considered beyond further debate. It is after all only a question of policy. The subject is not circumscribed by any statutory or constitutional provisions, and the courts of each state are at liberty to determine their own separate policies.”
. In the present case we have carefully examined the record as to the contention of defendant with reference to errors in the court’s charge and prejudicial misconduct of counsel for plaintiff but we can find nothing prejudicial to defendant. It is true that plaintiff’s counsel made a rather strenuous argument and did refer to the fact that testimony with reference to decedent’s drinking was a calumny on his good name, and the dead man could not appear to refute it. However, it must be remembered that the evidence was in dispute as to decedent’s drinking habits, and, although cirrhosis of the liver is frequently associated with heavy drinking, such drinking is not necessarily the cause of the disease.
*222 The court’s charge, as we have indicated, was rather scant upon some of the vital issues involved in the case, but if defendant desired a fuller exposition of the law with reference to such issues he should have requested it.
The excessive verdict in this case was an indication of passion or prejudice and the trial court may well have found that it was given under such influence. The mere size of a verdict may be some indication of passion or prejudice but it is not necessarily controlling. The question is solely one for the exercise of the discretion of the trial court, and, since in the present case that court found that, although the verdict was grossly excessive,, it did not appear to have been given under the influence of passion and prejudice, we do not feel justified in disturbing that finding as constituting an abuse of discretion.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman and Hart, JJ., concur.
Middleton, J., dissents.
Tart, J., not participating.