Matthias, J.
The principal issue in this case is the legal status of the plaintiff at the time of the accident. The defendant contends that plaintiff was the operator of a regulated vehicle and as such, under the Uniform Traffic Act, should have been using the right-hand side of the road, and that since he was using the left-hand side, contrary to statute, he is barred from recovering by his own negligence.
Plaintiff contends he was only a pedestrian and as such was in the proper use of the road when walking on the left side thereof.
Our question is whether one pushing a bicycle as he walks along a public road is a pedestrian or an operator of a regulated vehicle and as such subject to the Uniform Traffic Act.
Section 6307-2, General Code (Section 4511.01, Revised Code), defines “driver” or “operator” as “every person who drives or is in actual physical control of a vehicle.”
“Vehicle” is defined by Section 6307-2, General Code, as every device in, upon, or by which any person is or may be transported upon a highway, except devices other than bicycles moved by human power.
Standing alone this section would constitute the plaintiff the driver or operator of a vehicle. However, in the same section a “pedestrian” is defined as “any natural person afoot.” Under this definition plaintiff would be a pedestrian.
*95 Thus we have the anomalous situation where by statutory definition plaintiff could be either a pedestrian or the driver or operator of a vehicle. In order to resolve this conflict we must look to other sections of the Code which have application to a situation such as this to determine when the Uniform Traffic Act applies to bicycles.
Section 6307-50, General Code (Section 4511.52, Revised Code), provides that all foregoing sections and others “applicable to bicycles shall apply whenever a bicycle is operated upon any highway. ’ ’ Thus, if the bicycle is not being operated, the sections regulating a bicycle as a vehicle do not apply.
The plaintiff had ceased to use the bicycle as a means of transportation at the time of the accident, since he had dismounted therefrom and Avas proceeding on his journey on foot. Thus plaintiff clearly fell within the status of a pedestrian as defined by statute. Does the mere fact that at the time of the accident the plaintiff was walking and pushing a bicycle, a regulated vehicle, destroy his status as a pedestrian?
To answer this, we must determine the meaning of the word, “operated,” as used in Section 6307-50, General Code, providing that the traffic laws apply to bicycles “operated upon any highway.” Although the word, “operator,” is specifically defined in Section 6307-2, “operated” is not so defined, and in the absence of special definition it is presumed that the General Assembly used the word in its common and ordinary meaning, since in the construction of a statute, unless the statute indicates a contrary or different meaning, words are given their ordinary meaning. 37 Ohio Jurisprudence, 542, Statutes, Section 288.
Therefore, the General Assembly, Avhen it used the word, “operated,” in regard to the applicability of the laAvs to bicycles, used such word in its common and ordinary meaning.
A bicycle is “operated” within the common and ordinary meaning of the word, where such bicycle is being used as a means of transportation, or in other words when it is being ridden. Certainly, in ordinary parlance, a bicycle Avould not be considered as being operated Avhen it is being pushed, and the individual pushing it is walking along side thereof. To include the pushing of a bicycle within the meaning of the *96 •word, “operated,” would give to such a word a strained and unnatural meaning.
The mere fact that the plaintiff at the time of the injury was pushing a bicycle does not change his status as a pedestrian.
Thus by virtue of Section 6307-50, General Code, the sections of the Code relating to the operation of bicycles on the highway do not apply in the present instance.
Therefore plaintiff at the time of the accident was clearly a pedestrian.
Section 6307-48, General Code (Section 4511.50, Revised Code), provides in part as follows:
“(B) Where usable walks or paths are not provided parallel to the street or highway, pedestrians may walk along or upon the traveled portion of such street or highway and where practicable shall face the approaching traffic, and shall exercise due care to avoid approaching traffic.”
The plaintiff at the time of the accident was in the proper use of the highway and, therefore, was not guilty of negligence per se by walking on the left side of the highway.
The defendant has raised several questions in relation to requested special charges and the general charge of the court. All such assignments are based on the presumption that the plaintiff was the operator of a regulated vehicle, and, it having been determined that the status occupied by plaintiff was that of a pedestrian, it is unnecessary for us to discuss these assignments of error.
The defendant contends that the granting of a remittitur in so large an amount in itself shows that the verdict was a result of passion and prejudice and should be overruled. This contention is without merit. The amount of a verdict is not in itself conclusive of the fact of passion or prejudice; there must be facts in addition thereto. This was well stated in Larrissey, Admx., v. Norwalk Truck Lines, Inc., 155 Ohio St., 207, 98 N. E. (2d), 419, where, in the course of the opinion, it was said:
“However, it has long been the rule in Ohio, and it is the majority rule in the nation, that if a verdict in an action for unliquidated damages is excessive, but not appearing *97 to have been influenced by passion or prejudice, the court may, with the assent of plaintiff, reduce the verdict by remittitur to any amount warranted by the evidence.
“In the case of Pendleton Street Rd. Co. v. Rahmann (1872), 22 Ohio St., 446, it was held:
“ ‘Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the remittitur of the excess the condition of refusing to grant a new trial."
“In that case, the verdict was for $10,000 and the court put the plaintiff to an election to remit $5,000 or submit to a new trial. The plaintiff electing to take the remittitur, the court overruled the motion for a new trial.
“From that time the almost uniform holdings of this court have been to the same effect, and, unless there is some episode in the trial, such as language of the trial court in its charge to the jury deliberately calculated to engender sympathy, as in the ease of Toledo, Columbus & Ohio River Rd. Co. v. Miller, 103 Ohio St., 17, 132 N. E., 156, or some other event such as highly improper argument by counsel tending to inflame a jury, the question whether a verdict has been given under the influence of passion and prejudice or whether it is merely excessive and can be cured by remittitur is largely left to the discretion of the trial court.”
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Hart, Zimmerman, Stewart, Bell and Taft, JJ., concur.