TAYLOR, ADMRX., APPELLANT, *v.* C. LAWRENCE DECKER, M.D., INC., ET AL., APPELLEES; BETHESDA HOSPITAL & DEACONESS ASSN.

(No. C-850466 — Decided December 31, 1986.)

*Jeffrey S. Schwartz* and *Carl W. Zugelter,* for appellant.

*Lindhorst & Dreidame* and *John A. Goldberg,* for appellees.

*Per Curiam.* This cause came to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

Appellant's decedent was her thirty-eight-year-old husband, James L. Taylor ("James"). At approximately 4:00 a.m., October 6, James awoke with chest pains. As he was still experiencing chest pains at 10:00 a.m., James suggested that he should go to the hospital. James began driving the car to the hospital, but his chest pains became so severe that he was forced to pull off the road. Appellant jumped out of the car and alerted a nearby police officer who summoned an ambulance. The life squad started an intravenous solution of dextrose and water and administered oxygen to James. He was transported to the Bethesda North Hospital Emergency Room.

Shortly after 11:30 a.m., James was taken into the Bethesda North Hospital Emergency Room. The admission sheet stated that at 4:00 a.m. James began experiencing chest pain which radiated to both shoulders. The pain was accompanied by shortness of breath and sweating. The admission sheet also noted that James was taking two medicines for high blood pressure. In addition, James smoked and was overweight.

Appellee Philip R. Maur, M.D. was the emergency room physician who treated James. Certain tests were administered to James, including an electrocardiogram. At approximately 1:55 p.m. James was discharged from the emergency room. He was given a card containing instructions with respect to his chest pain. James arrived home at approximately 3:00 p.m. and went into his living room. Suddenly he screamed, his eyes rolled back into his head and

he jerked violently. The life squad was summoned. James was rushed back to the Bethesda North Hospital Emergency Room under full cardiopulmonary resuscitation, and he was pronounced dead upon arrival at the hospital. The cause of death was a type of heart attack known as a myocardial infarction.

On August 17, 1982, appellant filed the within complaint, containing wrongful death and survival causes of action, against appellees and Bethesda Hospital and Deaconess Association ("Bethesda"). Subsequently, Bethesda settled and was dismissed from the case. The matter proceeded to trial before a jury. At trial, appellant presented experts who testified that the failure of appellee Maur to admit James to the hospital upon his initial visit to the emergency room was negligent, below the standard of care of physicians, and the proximate cause of his death. Further, there was expert medical testimony that if James had been admitted to the hospital, he probably would have survived the heart attack. The medical experts could not say, however, exactly how long James would have lived after surviving the heart attack.

The trial court directed a verdict for appellees as to the wrongful death action. Following additional testimony by appellant's witnesses, the trial court directed a verdict in favor of appellees as to the survival action. Appellant timely appealed.

Appellant's sole assignment of error alleges:

"The trial court committed reversible error by sustaining the motions for directed verdict of appellees, and dismissing the wrongful death and survival actions filed by plaintiff-appellant herein."

We will initially deal with the trial court's granting of appellees' motion for directed verdict as to the wrongful

death cause of action. The record reveals that appellant presented the expert testimony of Lewis Seeder, M.D., a physician practicing emergency medicine and physical medicine and rehabilitation. Dr. Seeder testified that the failure to admit James to the hospital was negligent, below the standard of care of physicians, and the proximate cause of his death. Further, Dr. Seeder testified that in his opinion, based upon the patient's history and the diagnostic tests administered, James should have been admitted to the hospital for observation and monitoring of his cardiac rhythm. Dr. Seeder stated that had James been admitted to the hospital, the greatest medical probability was that he would have survived the myocardial infarction and the hospitalization following the heart attack, as certain treatments would have been available in the hospital. In fact, Dr. Seeder estimated that there was an eighty-five to ninety percent probability that James would have survived the heart attack had he been hospitalized. However, Dr. Seeder was unable to say specifically how long James would have lived following his heart attack. Finally, Dr. Seeder stated that in his opinion, the direct and proximate cause of James Taylor's death was the failure of appellee Maur to admit James to the hospital.

Appellant also introduced into evidence the expert testimony of cardiologist Fred D. Holford, M.D. Dr. Holford testified that James should have been admitted to the hospital for observation and treatment and that failure to admit James was below the ordinary standard of care. Further, Dr. Holford testified that in his opinion, with proper diagnosis and treatment, the greatest medical probability was that James would have survived the heart attack. However, Dr. Holford testified that it would be difficult to project the life expectancy in terms of a specific number of years.

In granting appellees' motion for a directed verdict the trial court stated in pertinent part:

"* * * it is the Court's opinion as a matter of law that even if Dr. Maur was negligent and failed to use that standard as recognized in the community for emergency physicians, even if he had admitted the decedent into the hospital, the Coronary Care Unit, there is no medical evidence, no expert evidence whatsoever, to indicate the life expectancy of the decedent. The only evidence is that he would have survived. But not one expert can say he would have survived for one day or two days or a month or a year. And without some medical evidence, some expert opinion on this issue, then the jury would be forced to speculate, as the doctors themselves admitted they were forced to speculate as to the life expectancy of the decedent — how it would be shortened if it was shortened on the failure of admission. * * *"

Apparently, the trial court felt that because no expert testimony was presented that James would have survived a definite period of time, such as a day, a month, or a year, appellant had failed to establish a cause of action for wrongful death. We disagree.

In an action for wrongful death where medical malpractice is alleged as the proximate cause of death, the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis and treatment the patient probably would have survived. *Cooper* v. *Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St. 2d 242, 56 O.O. 2d 146, 272 N.E. 2d 97.

The Court of Appeals for the Eighth District stated, in *Shapiro* v.

*Burkons* (1978), 62 Ohio App. 2d 73, 78, 16 O.O. 3d 175, 179, 404 N.E. 2d 778, 781:

"Therefore, the primary issue to be determined by this court in the case at bar is whether after construing the evidence adduced most strongly in favor of the appellants, an inference may reasonably arise that the alleged negligence by appellee was, *in probability,* the direct and proximate cause of appellant's reduced life span. Stated differently, the issue is whether appellant adduced sufficient probative evidence from which it may be inferred that her medical prognosis would probably have been better were it not for the alleged negligence of the appellee."

It is clear from the record *sub judice* that appellant presented sufficient probative evidence that appellee Maur's failure to admit James to the hospital was negligent, below the standard of care and the proximate cause of James's death. Both of appellant's expert witnesses testified that James would have survived the heart attack if he had been hospitalized. The Supreme Court of Ohio held in *Larrissey* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 215, 44 O.O. 238, 241, 98 N.E. 2d 419, 424:

"* * * plaintiff does not have the burden of proving the length of the period by which decedent's life was shortened and what damages flow only therefrom."

The *Larrissey* court went on to state that the plaintiff in a wrongful death case has the right to present evidence tending to show the decedent would have lived a long time had his death not been accelerated by the wrongful act. Further, the court pointed out that a defendant in a wrongful death case could present evidence in mitigation of damages such as the age, weakness, diseased condition, impaired earning power or lack of activity of the decedent, which evidence tends to prove that the decedent would have lived only a very short time had his death not been accelerated by the wrongful act.

Appellees argue that the case *sub judice* is controlled by *Senvisky* v. *Truscon Steel Division of Republic Steel Corp.* (1959), 168 Ohio St. 523, 7 O.O. 2d 390, 156 N.E. 2d 724, *McKee* v. *Electric Auto-Light Co.* (1958), 168 Ohio St. 77, 5 O.O. 2d 345, 151 N.E. 2d 540, and *Lopresti* v. *Community Traction Co.* (1954), 160 Ohio St. 480, 52 O.O. 359, 117 N.E. 2d 2; however, we find these cases to be distinguishable from the case at bar. In the cases cited by appellees the court held that the plaintiffs had failed to prove that the alleged negligence proximately caused or accelerated the decedent's death. In the case *sub judice* there is expert medical testimony that the alleged medical malpractice was the proximate cause of James's death. In addition, *McKee* and *Senvisky* involved death awards under the Workmen's Compensation Act and the related issue of controlling benefit awards in accelerated death cases under the Act. See *Pierson* v. *Hermann* (1965), 3 Ohio App. 2d 398, 402, 403, 32 O.O. 2d 533, 535-536, 210 N.E. 2d 893, 897.

We determine that in the case *sub judice,* appellant was not required to submit evidence as to the specific period of time that James would have lived following his heart attack. It is sufficient that appellant presented evidence that the medical probability was that James would have survived the heart attack and the hospitalization. Appellees could then submit evidence tending to show either that James would not have survived the heart attack or that he would have lived only a very short time because of his heart condition. We find the trial court erred in directing a verdict in favor of ap-

pellees as to the wrongful death cause of action.

Additionally, we point out that appellant proffered evidence of damages in the form of expert testimony, a funeral bill, employment records and other evidence. The trial court excluded this evidence on the same basis that it directed a verdict in favor of appellees, to wit, that appellant did not present evidence as to what specific period of time James would have survived. Because we have ruled that the granting of the directed verdict was error, it follows that the exclusion of the evidence as to the damages on that same basis was erroneous.

We now turn to the trial court's granting of appellees' motion for directed verdict as to the survival action. The trial court granted appellees' motion, holding that there was no evidence of any pain and suffering on the part of decedent between the time he was discharged from the hospital and the time of his death. We disagree. Following a complete review of the record we find that there is some competent evidence from which reasonable minds could reach differing conclusions as to whether decedent suffered pain proximately caused by the alleged medical malpractice. There was expert medical testimony that there are drugs and treatments available in a hospital to alleviate the pain associated with this type of heart attack. We determine the trial court erred in granting appellees' motion for directed verdict as to the survival cause of action.

Appellant's assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with law and with this decision.

*Judgment reversed and cause remanded.*

DOAN, P.J., KEEFE and BLACK, JJ., concur.