OPINION
{¶ 1} This is an appeal and cross appeal from the Common Pleas Court of Stark County. Prior appeals in this cause have been filed in this court and with the Ohio Supreme Court.
 STATEMENT OF THE FACTS AND CASE {¶ 2} We shall take the summary of the facts in part from the prior appeals and from the files and briefs.
 {¶ 3} Appellant may be referred to herein as "Plaintiff" and Appellees-Cross Appellants as "Defendants" or as Appellants and Appellees.
 {¶ 4} In June of 1998, Appellant, Lauri Weinfeld, purchased land in Perry Township, Ohio. Appellees reside on an adjoining parcel. Appellant's property is known as "Lakeside Center" (hereinafter "center") and contains an enclosed building, a gazebo and gardens on a lake known as "Lake Dee Mar." Said center is used for recreational purposes including weddings, receptions, social gatherings and meetings. Appellant operates the center pursuant to a conditional use permit granted by the Perry Township Board of Zoning Appeals (hereinafter "Board").
 {¶ 5} The granting of such use permit and a variance have also been the subject of litigation and appeals but is not involved in this appeal.
 {¶ 6} On July 22, 1999, Appellant filed a complaint against Appellees claiming nuisance, trespass, civil conspiracy, defamation and intentional interference with contract. Appellant, in pertinent part, alleged Appellees intentionally and deliberately operated noisy pieces of lawn equipment in an attempt to disrupt the events being conducted at the center. Appellant sought money damages and injunctive relief. Appellant also filed a motion for a temporary restraining order restraining appellees from further disruption. Appellees counterclaimed on various causes of action.
 {¶ 7} On October 26, 1999, Herbert and Tammy Barlow filed a complaint against the Appellees in the Massillon Municipal Court, alleging that Appellees had intentionally interfered with their wedding, which took place at Lakeside Center on July 11, 1999. Such case was transferred to the Stark County Common Pleas Court and consolidated with the case pending between Appellant and Appellees but has, after trial and appeal, been resolved.
 {¶ 8} The case was set for jury trial in November, 2003, and prior to such trial, the Plaintiff-Appellant voluntarily dismissed her claims for defamation and invasion of privacy and Defendants-Appellees dismissed their claims for zoning violations and violations of deed restrictions.
 {¶ 9} The jury found in favor of the defendants on all causes of action, awarded no damages to the plaintiff, and found in jury interrogatories that the plaintiff failed to prove intentional interference with her business, intentional infliction of emotional distress, nuisance or trespass. Also the jury denied the plaintiff's claims of a defective septic system and claims that the storage of farm machinery by the defendants constituted and other actions a nuisance, trespass or violation of deed restrictions.
 {¶ 10} The jury awarded Appellees compensatory damages of $5,412.38 and punitive damages of $250,000.00 on their claim of invasion of privacy. Attorney fees were stipulated at $10,000.00.
 {¶ 11} On December 6, 2002, plaintiff moved for judgment notwithstanding the verdict or in the alternative for a new trial or remittitur. On June 5, 2003, the trial court overruled the plaintiff's motion for judgment notwithstanding the verdict, but granted a remitter of the punitive damages award to $35,000.00, subject to acceptance by the defendants. The defendants did not accept the remittitur. The trial court, upon rejection of the remittitur, granted a new trial on the invasion of privacy issue with respect to the defendants' counterclaim as well as on the issue of damages.
 {¶ 12} Appellant, Lauri Weinfeld, raises the following Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 13} "I. THE JURY'S VERDICT WAS INADEQUATE, UNSUPPORTED BY THE RECORD AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THUS WARRANTING A REVERSAL AND NEW TRIAL OF THIS CASE.
 {¶ 14} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JNOV ON APPELLEES' COUNTERCLAIM FOR INVASION OF PRIVACY.
 {¶ 15} "III. THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF A SURPRISE WITNESS.
 {¶ 16} "IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A PERMANENT INJUNCTION.
 {¶ 17} "V. THE TRIAL COURT ERRED IN DENYING APPELLANT RELIEF FROM APPELLEES DEED RESTRICTION VIOLATIONS."
 {¶ 18} Appellees submit their cross-appeal with two Assignments of Error:
 {¶ 19} "I. THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL ON DEFENDANTS' COUNTERCLAIM FOR INVASION OF PRIVACY.
 {¶ 20} "II. THE TRIAL COURT ERRED IN GRANTING A REMITTITUR AND REDUCING THE PUNITIVE DAMAGES AWARD."
 I. {¶ 21} Appellant's First Assignment claims the jury's findings were against the manifest weight of the evidence and unsupported. We disagree.
 {¶ 22} In reviewing the records to the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. Statev. Martin (1997), 78 Ohio St.3d 380. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 23} Appellant has coupled her argument as to the manifest weight of the Appellee's evidence with error as to a denial of a request for a new trial (although a new trial on the invasion of privacy issue was subsequently ordered).
 {¶ 24} "Where trial court is authorized to grant new trial for reason which requires exercise of sound discretion, order granting new trial may be reversed only upon showing of abuse or discretion. Const. Art. 4, § 6; R.C. § 2321.17. Rohde, Admr., et al. v. Farmer (1970), 23 Ohio St.2d 82.
 {¶ 25} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrary or unconscionably.
 {¶ 26} We have examined the numerous references to the record by Appellant and Appellees and the jury's response to the Interrogatories propounded and, without substituting our opinion for that jury, determine that competent, credible evidence supports the jury's acceptance of the evidence it concluded to be more credible.
 {¶ 27} We therefore reject the First Assignment of Error of Appellant.
 II. {¶ 28} Appellant's Second Assignment questions the court's denial of her motion for judgment notwithstanding verdict on Appellee's counterclaim for invasion of privacy.
 {¶ 29} Appellant correctly identifies the standard as to a motion for judgment notwithstanding verdict as set forth in Ayres v. Woodard
(1957), 166 Ohio St. 138:
 {¶ 30} "Test to be applied by a trial court in ruling on motion for judgment notwithstanding verdict is same test such court must apply in ruling on motion for a directed verdict.
 {¶ 31} In order to sustain either a motion for judgment notwithstanding verdict or a motion for directed verdict, court must view evidence received upon trial and facts established by admission in pleadings and in record in light most favorable to him against whom motion is directed and decide that upon all such evidence and facts, reasonable minds could come to but one conclusion regarding verdict.
 {¶ 32} In ruling on motion for judgment notwithstanding verdict, neither the weight of evidence nor the credibility of witnesses is for court's determination."
 {¶ 33} Also, Civil Rule 50 (A)(4) provides:
 {¶ 34} "When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 35} Civil Rule 50(B), however, limits the review by providing that no judgment (on a motion judgment notwithstanding verdict) to be rendered by the court on the ground that the verdict is against the weight of the evidence. This, as shown above, correlates with Ayers v. Woodard.
 {¶ 36} As to invasion of privacy, the Ohio Supreme Court has addressed such right in various cases. Historically, the review was set forth inHoush v. Peth (1956), 165 Ohio St. 35, which states:
 {¶ 37} "The first question presented by the defendant is whether the right of privacy exists in Ohio.
 {¶ 38} "This right has had an interesting history. Its basic concept in various forms is not new, but in this country its chief impetus as an independent right seems to have originated in an article by Samuel D. Warren and Louis D. Brandeis in the year 1890 in 4 Harvard Law Review, 193. The first recognition of the right by a court of dernier ressort
apparently was in the case ofPavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68,
69 L.R.A. 101, 106 Am.St. Rep. 104, 2 Ann.Cas. 561. The syllabus in that case reads in part as follows:
 {¶ 39} "`2. A right of privacy is derived from natural law, recognized by municipal law, and its existence can be inferred from expressions used by commentators and writers on the law as well as judges in decided cases.
 {¶ 40} "`3. The right of privacy is embraced within the absolute rights of personal security and personal liberty.
 {¶ 41} "4. Personal security includes the right to exist, and the right to the enjoyment of life while existing, and is invaded not only by a deprivation of life, but also by a deprivation of those things which are necessary to the enjoyment of life according to the nature, temperament, and lawful desires of the individual.
 {¶ 42} "5. Personal liberty includes not only freedom from physical restraint, but also the right `to be let alone'; to determine one's mode of life, whether it shall be a life of publicity or of privacy; and to order one's life and manage one's affairs in a manner that may be most agreeable to him so long as he does not violate the rights of others or of the public.'"
 {¶ 43} Both Appellant and Appellees have discussed the extent of and requirements constituting an invasion of privacy.
 {¶ 44} In Sustin v. Fee (1982), 69 Ohio St.2d 143, the Court reiterated its ruling in Housh v. Peth and also quoted the Restatement of Torts:
 {¶ 45} "Today the intrusion into a person's seclusion is recognized as but one of four separate branches of tortious invasion of privacy. These are set out in Section 652A of the Restatement of Torts 2d, at page 376, as follows:
 {¶ 46} "(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
 {¶ 47} "(2) The right of privacy is invaded by * * *
 {¶ 48} "(a) unreasonable intrusion upon the seclusion of another * * *
 {¶ 49} "(b) appropriation of the other's name or likeness * * *
 {¶ 50} "(c) unreasonable publicity given to the other's private life * * *
 {¶ 51} "(d) publicity that unreasonably places the other in a false light before the public * * *."
 {¶ 52} "See, also, Prosser on Torts (4 Ed.), 802, Sec. 117. The development of the right of privacy as a separate tort is chronicled inZacchini v. Scripps-Howard Broadcasting Co. (1976), 47 Ohio St.2d 224,351 N.E.2d 454, reversed on other grounds (1977), 433 U.S. 562,97 S.Ct. 2849, 53 L.Ed.2d 965.
 {¶ 53} "The scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
 {¶ 54} Again in M.J. DiCorpo, Inc. v. Sweeney (1994), 69 Ohio St.3d 497, the Court stated:
 {¶ 55} "Finally, appellees suggest that Sweeney's affidavit impugned DiCorpo by linking DiCorpo with Kelley, thereby placing DiCorpo in a false light before the public. According to appellees, this case provides us with an opportunity to recognize a cause of action in Ohio for invasion of privacy under a "false light" theory of recovery. In Yeagerv. Local Union 20 (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 424,453 N.E.2d 666, 669-670, we said, "[t]his court has recognized a cause of action for invasion of privacy in Housh v. Peth (1956), 165 Ohio St. 35
[59 O.O. 60, 133 N.E.2d 340]. However, this court has not recognized a cause of action for invasion of privacy under a `false light' theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the `false light' theory of recovery in Ohio at this time." Given our determination that the statements contained in Sweeney's affidavit cannot form the basis for civil liability, this case (likeYeager) is obviously not the appropriate case to consider adopting, or rejecting, the false light theory of recovery."
 {¶ 56} Unfortunately, these leading cases of Sustin v. Fee and DiCorpov. Sweeney involved issues of immunity and privilege, respectively, and did not provide a final answer as to whether, in an appropriate case, the court would adopt the "false light" branch of the Restatement.
 {¶ 57} Therefore, it remains an open question, rather than an absolute rejection whether such theory would be recognized. We do not choose to decide what constitutes an appropriate case wherein the Ohio Supreme Court would finalize such issue as we are not required in this case to reach such decision and would be reluctant, in any event, to do so without affirmative guidance from the Supreme Court.
 {¶ 58} We are not convinced by Appellant's argument that the area of Appellees' property as to which Appellant admittedly installed video cameras and floodlights was so public as to be compared to a roadway such as referenced in Restatement Section 652B.
 {¶ 59} The jury could have so found in responding to Interrogatory No. 14.
 {¶ 60} The fact that Appellees' actions were subject to a prior preliminary injunction does not necessarily form a basis for cameras and floodlights as other forms of bringing violations to the court's attention were available.
 {¶ 61} We find no abuse of discretion under the Blakemore standards as to this Second Assignment and reject such Assignment.
 III. {¶ 62} Appellant's Third Assignment asserts that the testimony of a surprise witness was admitted erroneously. We disagree.
 {¶ 63} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and that court's ruling as to such matters will not be reversed absent an abuse of discretion. See:Krischbaum v. Dillon (1991), 58 Ohio St.3d 58, 66; Rigby v. Lake Cty.
(1991), 58 Ohio St.3d 269, 271. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 64} We agree with Appellees that our opinion in Speers v.Tri-County Dermatology, Inc., (Sept. 24, 2001), Stark App. No. 2000CA00029, 2001-Ohio-1300, does not support Appellant's argument as to this Assignment of Error but Wood v. Humphries, (July 31, 1986), Tusc. App. No. 85-A08-065, of this Court is more appropriate. Such case, as Appellees note, stated:
 {¶ 65} "In a civil trial, neither party is required to state before trial who will be called as witnesses unless an expert witness is to be called. As to any requirement to name witnesses prior to trial, Civ. R. 26 provides inter alia:
 {¶ 66} "Civil Rule 26(B)(1): Parties may obtain discovery regarding . . . the identity and location of persons having knowledge of any discoverable matter.
 {¶ 67} "Civil Rule 26(B)(4)(b): . . . a party by means of interrogatories may require any other party (i) to identify each person whom the other party expects to call as an expert witness at trial, . . . (Emphasis added)
 {¶ 68} "Civil Rule 26(E)(1): A party is under a duty seasonably to supplement his response . . . to (a) the identity and location of persons having personal knowledge of discoverable matters, and (b) the identity
of each person expected to be called as an expert witness at trial . . . (Emphasis added)"
 {¶ 69} We, therefore, reject this Third Assignment of Error.
 IV. {¶ 70} Appellant's Fourth Assignment as to denial of a permanent injunction, based on the jury's conclusions particularly in its responses to the Interrogatories does, contrary to Appellant's argument, form a sufficient reason for the court to refuse to exercise its discretion in favor of a permanent injunction.
 {¶ 71} Again, no abuse of discretion under Blakemore, supra, is found.
 {¶ 72} This Fourth Assignment is denied.
 V. {¶ 73} Appellant's Fifth Assignment references a claimed violation of the deed restrictions.
 {¶ 74} This Assignment reflects the court's failure to issue an injunction relative to such claimed violations.
 {¶ 75} The asserted violations are:
 {¶ 76} "The property shall be used for private residential purposes only.
 {¶ 77} "No commercial business of any kind shall be permitted on said lot.
 {¶ 78} "No nuisance of any kind shall be maintained on said premises.
 {¶ 79} "The owner shall maintain a generally good appearance of said premises.
 {¶ 80} "No water that has been used for any purpose shall be permitted to drain into Lake DeeMar.
 {¶ 81} "All sewage and waste water shall be drained into an approved septic tank which shall be kept in good repair at all times.
 {¶ 82} "Each resident shall have at least 900 feet of leech line, and no septic tank or leech line shall be constructed or maintained nearer than 100 feet from the shores of Lake Dee-Mar."
 {¶ 83} Appellant correctly states that interpretations of law are within the province of the court rather than the jury. The problem with this analysis is that, while the court does review the meaning or ambiguity thereof of a legal document and clauses therein, including deeds, the actual violation of a restriction is one of fact, not interpretation.
 {¶ 84} Also, these factual issues were submitted by jury instructions and interrogatories and the submission thereof is not an assignment of error and cannot be raised on appeal.
 {¶ 85} Here, Appellant states that Appellees were engaged in the commercial business of farming. While the evidence does disclose that farm equipment was stored on Appellees' land, the evidence accepted as factual by the jury was that the utilization of such equipment in farming was done elsewhere.
 {¶ 86} Of course, Appellant was clearly engaged in a commercial business on her property.
 {¶ 87} The jury, as to the other claimed violations failed to accept the evidence offered. See the responses to Interrogatories Numbers 5, 7, 9, 15, 17 and 19.
 {¶ 88} It is within the providence of trier of fact to accept or reject such testimony it finds to be more credible, whether presented by experts or lay witnesses.
 {¶ 89} Considering the findings of the jury and the evidence presented, we find no abuse of discretion relative to this Fifth Assignment, which is overruled.
 DEFENDANT-APPELLEES' CROSS ASSIGNMENTS OF ERROR I., II. {¶ 90} We shall consider the issues as to the two Cross Assignment of Error of Defendant-Appellees together.
 {¶ 91} In a very well-reasoned opinion, Judge Reinbold reviewed the issues of granting a remittitur or a new trial. In said opinion, Judge Reinbold stated:
 {¶ 92} "Remittitur gives the plaintiff the option of accepting a lower damages award (as determined by the trial court) or receiving a new trial. Wightman v. Consolidated Rail Corp., 86 Ohio St.3d 341, 444, 199-Ohio-119, 715 N.E.2d 546. Kachmar v. HM Health Services, 7th Dist. No. 02 CA 48, 2002-Ohio-7182. `Where the damages assessed by the jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the remittitur of the excess the condition of refusing to grant a new trial.' Larrissey v. Norwalk Truck Lines (1951),155 Ohio St. 207, 219, 98 N.E.2d 419. The Justice Pfeifer in Wightman
discussed the importance of a court's authority to grant remittitur:
 {¶ 93} "`Remittitur plays an important role in judicial economy by encouraging an end to litigation rather than a new trial. * * * There are times when an end has its own value, with justice delivered, and not further delayed. A final judgment brings closure, certainty, and possibly a commitment to changed future behavior. These are societal benefits as well as benefits to the parties. Wrongs are righted through judgments. Our justice system does not work without finality. Until then, the system's great value is in limbo. We take little from it, but we continually feed it with our energies, intellect, and emotions. Id. at 443.'
 {¶ 94} "`A court has inherent authority to remit an excessive award, assuming it is not tainted with passion or prejudice, to an amount supported by the weight of the evidence. Id. at 444. The Supreme Court has established four requirements to be met before a court may grant remittitur:
 {¶ 95} "`unliquidated damages are assessed by a jury,
 {¶ 96} "`the verdict is not influence [SIC] by passion or prejudice,
 {¶ 97} "`the award is excessive, and
 {¶ 98} "`the plaintiff agrees to the reduction in damages. Id. citingChester Park v. Schulte (1929), 120 Ohio St. 273, 166 N.E. 186, paragraph three of the syllabus.
 {¶ 99} "When considering remittitur, the court must keep in mind the twin goals of punitive damages: punishment and deterrence. Id. at 445. The U.S. Supreme Court recently discussed the purpose and limitations of punitive damages awards in State Farm Mut. Auto. Ins. Co. v. Campbell
(2003), 123 S.Ct. 1513, 1519-1520:
 {¶ 100} "* * * It is well established that there are procedural and substantive constitutional limitations on these awards. CooperIndustries, supra; Gore, supra, at 559, 116 S.Ct. 1589; Honda Motor Co.v. Oberg, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); TXOProduction Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711,125 L.Ed.2d 366 (1993); Haslip, supra. The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. Cooper Industries, supra, at 433,121 S.Ct. 1678; Gore, 517 U.S., at 562, 116 S.Ct. 1589; see also id., at 587, 116 S.Ct. 1589 (BREYER, J., concurring) (`This constitutional concern, itself harkening back to the Magna Carta, arises out of the basic unfairness of depriving citizens of life, liberty, or property, through the application, not of law and legal processes, but of arbitrary coercion'). The reason is that `e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.' Id., at 574, 116 S.Ct. 1589; Cooper Industries, supra, at 433, 121 S.Ct. 1678
("Despite the broad discretion that States possess with respect to the imposition of criminal penalties and punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion"). To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property. Haslip, supra, at 42, 111 S.Ct. 1032
(O'CONNOR, J., dissenting) (`Punitive damages are a powerful weapon. Imposed wisely and with restraint, they have the potential to advance legitimate state interests. Imposed indiscriminately, however, they have a devastating potential for harm. Regrettably, common-law procedures for awarding punitive damages fall into the latter category').
 {¶ 101} "The U.S. Supreme Court identified three guideposts to determine if a punitive damages award is grossly excessive:
 {¶ 102} "1. the degree of reprehensivility of the defendant's conduct,
 {¶ 103} "2. the ratio between the compensatory and punitive damages awarded in the case, and
 {¶ 104} "3. the difference between the award and the civil or criminal sanctions that could be imposed for comparable misconduct. BMW v. Gore
(1996), 517 U.S. 559."
 {¶ 105} * * * Civ. R. 59(A) states in pertinent part:
 {¶ 106} "(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 107} "* * *
 {¶ 108} "`(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 109} "* * *
 {¶ 110} "`(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 111} "`(7) The judgment is contrary to law;
 {¶ 112} "* * *
 {¶ 113} "`(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
 {¶ 114} "`In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.'
 {¶ 115} "The granting of a new trial lies in the Court's discretion.Rhode v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of syllabus. The Ohio Supreme Court explained that:
 {¶ 116} "`In ruling on a motion for new trial upon the basis of the claim that a judgment is not sustained by sufficient evidence, the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence. Nay v. Knighton 1999 WL 744200 (Ohio App. 5 Dist.) citingRhodes, supra.'"
 {¶ 117} We have quoted those parts of the court's judgment as to his determination warranting the conditional remittitur or new trial as they clearly express not only the applicable law but his reasons supporting his decision.
 {¶ 118} We find no abuse of discretion in regard to these conclusions.
 {¶ 119} The Two Cross-Assignments of Error are rejected.
 {¶ 120} This cause is affirmed at Appellant's costs.
Boggins, P.J. Hoffman, J. and Edwards, J. concurs in judgment only.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Stark County, Ohio, is affirmed. Costs assessed to Appellant and Appellees equally.