JEANNE et al., Appellees,

v.

HAWKES HOSPITAL OF MT. CARMEL et al.,
Appellants; Drabyn et al., Appellees.

[Cite as *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–599.

Decided May 23, 1991.

248

*Isaac, Brant, Ledman & Becker, Charles E. Brant, J. Stephen Teetor* and *James M. Roper,* for plaintiffs-appellees.

*Squire, Sanders & Dempsey, Thomas E. Palmer, Robin G. Weaver* and *William A. Klatt, Earl, Warburton, Adams & Davis* and *Ted L. Earl,* for appellants Mt. Carmel Health and John Thomas Cozzone.

*Porter, Wright, Morris & Arthur, James S. Oliphant* and *Joyce D. Edelman, Arnold & Porter, Bruce M. Chadwick* and *Edward L. Wolf,* for American Red Cross.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Gayle E. Arnold* and *Scott P. Whonsetler,* for Gerald A. Drabyn and Ohio Plastic Surgeons, Inc.

---

BOWMAN, Presiding Judge.

In early 1985, appellee, H. Chrystal, saw Dr. Gerald Drabyn, a plastic surgeon, who recommended that appellee have breast reduction surgery to help alleviate her long-standing back pain and problems. Appellee elected to have the surgery and Drabyn requested that appellee give her own blood prior to surgery. On March 1, 1985, appellee had a unit of her own blood drawn by the Red Cross in anticipation of her surgery. Also, prior to the surgery, appellee's mother, appellee, Judy Jeanne ("Jeanne"), advised Drabyn's office that if there was any blood needed in appellee's surgery, in addition to that donated by appellee, then appellee's family wanted to give it.

On March 25, 1985, Drabyn performed elective bilateral breast reduction surgery on appellee at Hawkes Hospital of Mount Carmel and Mount Carmel Medical Hospital ("Mt. Carmel"), appellant. Drabyn was assisted in the surgery by appellant, Dr. John T. Cozzone, a resident of plastic surgery at Mt. Carmel. During the surgery, appellee had a little more than normal blood

loss and, as a result, she received the unit of her own blood which had previously been drawn by the Red Cross.

In the early morning hours of March 26, 1985, Cozzone examined appellee and determined that she was not bleeding, and that her dressings were dry and intact. In addition, her temperature was normal and her vital signs were fairly stable; however, her pulse was elevated. There were no indications that appellee was lightheaded, pale or had any difficulty ambulating on her own. At the time of this examination, appellee's hemoglobin level was 9.5. Cozzone noted on appellee's chart: "patient doing well."

Later that morning, at approximately 10:45 a.m., Cozzone received a phone call from Nurse Siers, who informed him that appellee's hemoglobin level had fallen to 8.2. As a result of this information, Cozzone ordered that two units of blood be typed and cross-matched, and that one unit be given to appellee.

Later in the day on March 26, 1985, appellee was transfused with a unit of packed red cells which had been collected by the Red Cross on March 7, 1985 from an unidentified person known as "Donor A." This blood had been tested by the Red Cross for hepatitis and venereal disease, and had been represented to Mt. Carmel by the Red Cross as being safe. The blood had not been tested for the Acquired Immune Deficiency Syndrome ("AIDS") virus. When Mt. Carmel received the blood from the Red Cross, it reconfirmed the typing and cross-matching; however, it did not test the blood for hepatitis, venereal disease or the AIDS virus because it did not have the facilities to do so.

The Columbus Chapter of the Red Cross received the test kits to test blood for the AIDS virus on March 7, 1985; however, the Red Cross did not receive the necessary equipment to use the test kits until March 11, 1985. The Red Cross started their phase-in testing for the AIDS virus beginning with the blood that was donated and collected on March 18, 1985. The Red Cross began testing their inventory blood for the AIDS virus on April 1, 1985.

In May 1985, Donor A returned to the Red Cross to make another donation. At that time, Donor A's blood was tested for the AIDS virus and the test was found to be positive.

In July 1986, the Red Cross began tracing blood from infected donors, who had donated blood before the AIDS test was available, to see if any recipients of the infected donor's blood were infected with the AIDS virus. It was as a result of this "look back program" that it was determined that appellee had been transfused with a unit of blood that Donor A donated on March 7, 1985.

In August 1986, Jeanne was told that the family doctor discovered that appellee had been exposed to the AIDS virus when she received the blood

transfusion after her breast reduction surgery. As a result, Jeanne sought treatment from a psychiatrist.

Jeanne assembled appellee's entire family and the family doctor, and together they told appellee that she had been exposed to the AIDS virus. Thereafter, appellee's blood was tested for HIV exposure and the test was positive. It is undisputed that appellee was infected with the AIDS virus as a result of the transfusion she received on March 26, 1985.

On March 16, 1987, appellee and Jeanne filed a complaint against Mt. Carmel, Cozzone, Drabyn, Ohio Plastic Surgeons, Inc., the American Red Cross, the American Red Cross Central Ohio Chapter, and the American Red Cross Blood Services Central Ohio Region (all collectively known as the Red Cross), alleging medical malpractice, negligence, strict liability and negligent infliction of emotional distress.

On November 14, 1989, the Red Cross filed a motion for partial summary judgment asserting, among other things, that it was entitled to judgment on Jeanne's claim for negligent infliction of emotional distress because she did not set forth a valid claim for relief. Thereafter, Mt. Carmel, Cozzone and Drabyn filed motions for partial summary judgment on this same issue, among other things. On January 22, 1990, the trial court granted summary judgment to the Red Cross [1] on the issue of Jeanne's claim for negligent infliction of emotional distress as a matter of law, for the reason that Jeanne had no legal basis for her claim.

On February 22, 1990, appellee and Jeanne settled their claims against the Red Cross and dismissed their claims with prejudice. On February 26, 1990, appellee and Jeanne voluntarily dismissed with prejudice all of their claims against Drabyn and Ohio Plastic Surgeons, Inc. A trial then proceeded against Mt. Carmel and Cozzone for medical malpractice and lack of informed consent. The jury returned a verdict in favor of appellee for $12,000,000, $4,000,000 of which was for future medical costs. Based on the evidence presented at trial, the trial court remitted the future medical costs award to $150,000 and entered a final judgment in the amount of $8,150,000.

On March 29, 1990, appellants filed a motion for a new trial on the ground that the jury's verdict was rendered under the influence of passion or prejudice since the jury deliberated only two hours in reaching its verdict. On

---

1. The trial court specifically granted summary judgment to the Red Cross on the issue of Jeanne's claim for negligent infliction of emotional distress; however, this court finds that, although Mt. Carmel, Cozzone, Drabyn and Ohio Plastic Surgeons, Inc., were not specifically granted summary judgment on this issue, the holding by the trial court is equally applicable to all of these parties since the trial court recognized that they had all filed motions for partial summary judgment on the same issue.

April 27, 1990, the trial court overruled the motion stating that the judgment was supported by the evidence at trial, that no error of law occurred at trial which constituted grounds for a new trial, and that the verdict was not the result of passion or prejudice. Appellants now bring this appeal and assert the following assignments of error:

"A. The trial court erred in refusing to instruct the jury on the issue of remote causation.

"B. The trial court erred in failing to limit appellee's general damages to two hundred thousand dollars ($200,000) as provided by R.C. § 2307.43.

"C. The trial court erred in failing to grant appellants' motion for new trial on the ground that the jury's verdict was motivated by influence of passion or prejudice."

■ In their first assignment of error, appellants assert that the trial court erred in failing to instruct the jury on the issue of remote causation. Appellants assert that, under the remote cause doctrine, a defendant can be found not liable for a plaintiff's injury, even if defendant's negligent conduct was a cause in fact of the injury. Appellants assert that the remote cause instruction was essential to show that a defendant's conduct can be a cause in fact, while not being a legal cause, and that the lack of a remote cause instruction left the jury with a mistaken idea of how to determine proximate cause. Appellants argue that, even if they were negligent in ordering the blood transfusion, the error was prejudicial as they were prevented from showing that their conduct in the chain of events was not, in a legal sense, the proximate cause necessary to hold them responsible for appellee's acquiring AIDS.

The proposed jury instruction which appellants submitted to the court stated:

"A person is not responsible for injury to another if his act is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of any injury.

"Accordingly, if you find that defendant, John Cozzone, M.D., could not have reasonably foreseen or anticipated that as a natural and probable cause of his decision to order a blood transfusion for plaintiff [H. Chrystal], that she would receive blood contaminated with the AIDS virus then that result was only remotely caused, and not proximately caused, by Dr. Cozzone's decision to order a transfusion. If you find that the causal relationship between Dr. Cozzone's decision to order a blood transfusion and plaintiff's ultimate receipt

of contaminated blood was remote, and not proximate, then your verdict should be for the defendants."

■ Jury instructions which are correct, pertinent and presented in a timely manner should be included in substance in the general charge to the jury. *State v. Barron* (1960), 170 Ohio St. 267, 10 O.O.2d 299, 164 N.E.2d 409. However, abstract rules of law or general propositions, even though correct, should not be given unless they are specifically applicable to the facts in a given case. *State v. Guster* (1981), 66 Ohio St.2d 266, 20 O.O.3d 249, 421 N.E.2d 157.

In this case, although appellants' counsel timely requested that the jury be instructed on remote cause and objected when the charge was not given, this court finds that the facts of this case did not warrant the jury being so instructed.

■ A defendant is not liable to one injured as the result of some unusual occurrence that cannot fairly be anticipated or foreseen and is not within the range of reasonable probability. *Metzger v. Pennsylvania, Ohio & Detroit Rd. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203. See, also, *Armour & Co. v. Ott* (1927), 117 Ohio St. 252, 158 N.E. 189. Foreseeability of harm usually depends upon the defendant's knowledge. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. However, if an injury is the natural and probable consequence of a negligent act, and it is something that should have been foreseen in light of all of the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury; it is sufficient that his act is likely to result in injury to someone. *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859. See, also, *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313.

■ There is nothing in the record before this court disclosing a state of facts whereby an ordinarily prudent physician should not have reasonably anticipated or foreseen that appellee could get AIDS, or any other disease associated with blood transfusions, from the blood transfusion. See *Cleveland Elec. Illum. Co. v. Van Benshoten* (1929), 120 Ohio St. 438, 166 N.E. 374. As early as 1983 or 1984, Mt. Carmel held a symposium for their medical staff and hospital personnel which included a lecture on AIDS. At that time, it appeared that AIDS was spread in certain risk populations; however, it was noted that AIDS was also spread in a manner similar to Hepatitis B, which can be transmitted by blood.

Dr. Michael Greenburg, a hematologist from the Mount Sinai School of Medicine testified that, in January 1984, the New England Journal of Medicine published an article showing eighteen cases where it was felt that AIDS had been transmitted by blood. By February 1985, the Communicable Disease Center reported that there were one hundred twenty cases where AIDS had been brought on by the transfusion of blood.

Dr. Norman Malik, who is in charge of the Blood Bank at Mt. Carmel; Dr. Ambrose Ng, Medical Director of the American Red Cross Central Ohio Blood Services; Dr. James Parsons, who practices medicine at Mt. Carmel; Dr. Hubert Weinberg, Associate Director of the Division of Plastic Surgery at Mount Sinai Hospital; Dr. Ronald Naille; Dr. Cozzone; Dr. Michael Greenburg, a hematologist from Mount Sinai School of Medicine; and Dr. Melanie Kennedy, physician pathologist at Ohio State University College of Medicine, all testified that, in March 1985, they knew that AIDS could be transmitted by a blood transfusion. In fact, Dr. Malik testified that " * * * there would not be one physician who by 1985 would not know that AIDS could be transmitted by transfusion." Based on this evidence, it was foreseeable that if a person received a blood transfusion, one of the possible consequences of the transfusion was that the person could get AIDS.

It is well settled that a jury instruction need not be given unless it is specifically pertinent to an issue in the case. As such, a trial court does not abuse its discretion in deciding that the factual issues do not require, and will not be assisted by, a requested instruction and in deciding that the issue would be adequately covered by other instructions. See *Guster, supra.* See, also, *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 18 OBR 322, 480 N.E.2d 794.

This court finds that the trial court did not err in refusing to give the requested instruction on remote cause since the instruction was not specifically pertinent to an issue in the case. The court's general charge included all of the applicable law necessary to decide the case and, as such, it was sufficient to lead the jury in their decision-making process. Accordingly, appellants' first assignment of error is not well taken.

█ In their second assignment of error, appellants assert that the trial court erred in failing to limit appellee's general damages to $200,000 as required by R.C. 2307.43. Appellants assert that, because appellee sued them in connection with the treatment she received while under their care, her claim clearly falls within the purview of R.C. 2307.43 as a medical claim and, consequently, her general damages may not exceed $200,000. Because of this, the trial court should have remitted the $8,000,000 jury award for pain

and suffering to $200,000 so that the award was in compliance with the statute.

R.C. 2307.43 provides:

"In no event shall an amount recovered for general damages in any medical claim, as defined in division (D) of section 2305.11 of the Revised Code, not involving death exceed the sum of two hundred thousand dollars."

"Medical claim" is defined in R.C. 2305.11(D)(3), which states:

" 'Medical claim' means any claim that is asserted in any civil action against a physician * * * or hospital, against any employee or agent of a physician * * * or hospital * * * that arises out of the medical diagnosis, care, or treatment of any person. * * * "

This court finds that the $200,000 limit on the amount of general damages recoverable in a medical claim shall not be applied in this case because R.C. 2307.43 violates constitutional provisions with respect to equal protection of rights under the law. See Section 2, Article I, Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

The limitations placed upon governmental action by the Equal Protection Clauses of both the Ohio and United States Constitutions are essentially identical. *Kinney v. Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St.2d 120, 70 O.O.2d 206, 322 N.E.2d 880. Although equal protection of the laws does not totally prevent legislative classifications, it does require that reasonable grounds exist for making distinctions between those within and those outside a designated class. *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O.2d 469, 243 N.E.2d 66. Whether or not a statutory classification is reasonable, depends upon the purpose of the legislation. *Carrington v. Rash* (1965), 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675.

R.C. 2307.43 was enacted as a result of an alleged medical malpractice insurance crisis. Its purpose was to reduce the costs of medical malpractice insurance for defendants and their insurers by setting a maximum amount recoverable for general damages in order to prevent the huge recoveries that had been awarded in some medical malpractice cases. See *Duren v. Suburban Community Hosp.* (1985), 24 Ohio Misc.2d 25, 24 OBR 450, 495 N.E.2d 51. See, also, *Rose v. Toledo Hosp.* (July 8, 1983), Lucas C.P. No. 79–C583, unreported.

In reviewing an issue under equal protection, the inquiry must focus upon whether the statute under attack creates a discriminatory classification. If a classification involves a fundamental right or a suspect classification, such as race, the state bears the burden of showing that the classification is necessary to promote a compelling government interest. *Shapiro v. Thomp-*

*son* (1969), 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. However, in other classifications such as the one at issue in the case at bar, the applicable test under both the Ohio and United States Constitutions is " * * * whether the state, by its enactment of [a statute] has imposed differential treatment upon similarly situated classes of individuals, which treatment cannot be rationally justified by a conceivable, legitimate state interest. * * * " *Keaton v. Ribbeck* (1979), 58 Ohio St.2d 443, 445, 12 O.O.3d 375, 376, 391 N.E.2d 307, 308. A statutory classification cannot be tolerated unless a legitimate legislative objective is furthered by the classification. *McGowan v. Maryland* (1961), 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.

This court does not find that the state's interest in protecting medical malpractice defendants and their insurers and in reducing the cost of defending and indemnifying medical claims substantially furthers a legitimate state interest. See *Palan v. Fried* (Oct. 4, 1989), Lucas C.P. No. 87–1588, unreported. R.C. 2307.43 confers a benefit on medical malpractice defendants and their insurers which is unavailable to other defendants in other tort cases, thus, in effect, depriving plaintiffs in these cases of benefits which are available to others. See *Simon v. St. Elizabeth Med. Ctr.* (1976), 3 O.O.3d 164, 355 N.E.2d 903.

A further classification which the statute creates is a distinction between living and deceased medical malpractice victims. Under R.C. 2307.43, those medical malpractice victims who are living are limited to a recovery of $200,000 general damages. This $200,000 limit, however, does not apply in cases where the medical malpractice victim has died as a result of the malpractice.

This court finds that these classifications are irrational and arbitrary. The classifications impose the costs of something that is intended to benefit the general public entirely upon a class consisting of that fraction of individuals who are most severely injured by medical malpractice. See *Nervo v. Pritchard* (June 10, 1985), Stark App. No. CA–6560, unreported.

This court finds that there is no beneficial reason for the classifications and no legitimate or conceivable state interest is served by them. As the court stated in *Graley v. Satayatham* (1976), 74 O.O.2d 316, 320, 343 N.E.2d 832, 837–838:

"There is no satisfactory reason for this separate and unequal treatment. There obviously is 'no compelling governmental interest' unless it be argued that any segment of the public in financial distress be at least partly relieved of financial accountability for its negligence. To articulate the requirement is to demonstrate its absurdity, for at one time or another every type of profession or business undergoes difficult times, and it is not the business of

government to manipulate the law so as to provide succor to one class, the medical, by depriving another, the malpracticed patients, of the equal protection mandated by the constitution. Even remaining within the area of the professions, it is notable that the special consideration given to the medical profession by these statutes is not given to lawyers or dentists or others who are subject to malpractice suits.

"Additionally, assuming a valid legislative purpose to enact laws relating to protection of the public's health, this legislation may be counter-productive. The extending of special litigation benefits to the medical profession certainly cannot be considered as relating to protection of the public health. On the contrary, the quality of health care may actually decline. To the extent that in tort actions of the malpractice type if the medical profession is less accountable than formerly, relaxation of medical standards may occur with the public the victim.

"Courts, of course, may not invalidate legislation merely because it is perceived as unwise. Here there is a transgression of a basic constitutional principle forbidding unequal and special treatment for a class with no general beneficent reason apparent."

Accordingly, this court finds that R.C. 2307.43 violates the Equal Protection Clauses of both the Ohio and the United States Constitutions and, thus, the trial court did not err in refusing to reduce the judgment in favor of appellee from $8,000,000 to $200,000.

 This court also finds that R.C. 2307.43 violates the right to a trial by jury which is guaranteed by Section 5, Article I of the Ohio Constitution. The legislature may not in any way attempt to limit or abolish the right to a trial by jury. See *Gibbs v. Girard* (1913), 88 Ohio St. 34, 102 N.E. 299. The right to have a jury determine the amount of damages is a substantive right which may not be abridged. *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 533 N.E.2d 743.

In enacting R.C. 2307.43, the legislature limited the right to a trial by jury because it put a cap on the amount of damages a jury could award in a given case. The $200,000 limit bears no reasonable relationship to anything and prevents the jury from awarding damages based on the evidence adduced at trial. As such, R.C. 2307.43 unconstitutionally deprives a plaintiff of her right to a trial by jury. Appellants' second assignment of error is not well taken.

In their third assignment of error, appellants assert that the trial court erred when it did not grant their motion for a new trial on the ground that the jury's verdict was motivated by influence of passion or prejudice.

Civ.R. 59(A)(4) provides:

"**(A) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

" * * *

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice[.]"

The decision of whether to grant a motion for a new trial rests within the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal unless there is an abuse of discretion. *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 7 OBR 229, 454 N.E.2d 976. In relation to sustaining a motion for a new trial, an abuse of discretion implies an unreasonable, arbitrary or unconscionable attitude upon the part of the court. *Poske v. Mergl* (1959), 169 Ohio St. 70, 8 O.O.2d 36, 157 N.E.2d 344. A jury verdict should not be set aside unless the damages awarded are so excessive as to appear to have been awarded as a result of passion or prejudice. *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462.

In *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, 189 N.E. 851, the court set forth a standard to be utilized in determining whether a verdict was influenced by passion or prejudice and stated, at paragraph three of the syllabus:

"In order to determine whether excessive damages were so influenced, a reviewing court should consider, not only the amount of damages returned and the disparity between the verdict and remittitur where one has been entered, but it also becomes the duty of such court to ascertain whether the record discloses that the excessive damages were induced by (a) admission of incompetent evidence, (b) by misconduct on the party of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded." See, also, *Loudy v. Faries* (1985), 22 Ohio App.3d 17, 22 OBR 52, 488 N.E.2d 235.

The mere size of a verdict does not afford proof of passion or prejudice. *Pearson v. Cleveland Acceptance Corp.* (1969), 17 Ohio App.2d 239, 46 O.O.2d 411, 246 N.E.2d 602. See, also, *Guccione v. Hustler Magazine, Inc.* (Oct. 8, 1981), Franklin App. No. 80AP–375, unreported, 1981 WL 3516. It must appear that the jury's assessment of damages was so disproportionate as to shock reasonable sensibilities. *Spicer v. Armco Steel Corp.* (1974), 68 O.O.2d 314, 322 N.E.2d 279.

In this case, appellants do not assert that the jury verdict was influenced by passion or prejudice as a result of the admission of incompetent evidence or as a result of misconduct on the part of the court or counsel.

Appellants assert that the jury's verdict was motivated by undue influence of passion or prejudice because the jury awarded appellee damages in excess of those that she had pled in her complaint, and over and above the evidence produced at trial; because the jury deliberated for just slightly more than two hours in a complicated case which included highly technical medical issues, testimony of several experts and over one hundred exhibits; and because the jury was improperly charged when the trial court did not give the instruction on remote causation. This court has already addressed appellants' arguments with respect to the jury instruction on remote cause [2] and has found it to be without merit.

This court has examined the record in light of appellants' other contentions as to why the jury verdict was influenced by passion or prejudice and can find nothing to substantiate their assertions that the jury verdict was so influenced. This court will not substitute its judgment for that of the trial court, or for that of the jury, as damages are an issue within the province of the jury. See *Larrissey v. Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 44 O.O. 238, 98 N.E.2d 419. The mere fact that the jury returned a large verdict and deliberated over this verdict for a relatively short time does not warrant a finding that the jury's verdict was influenced by passion or prejudice. See *Pearson, supra.* Accordingly, this court finds no abuse of discretion on the part of the trial court in overruling appellants' motion for a new trial and appellants' third assignment of error is not well taken.

 Jeanne has also filed a cross-appeal as a result of the trial court's granting appellants' motion for summary judgment on her cause of action based on negligent infliction of emotional distress. She sets forth the following assignment of error:

"The trial court erred in granting summary judgment against cross-appellant Judy Jeanne for her claims of negligent infliction of emotional distress."

In ruling on appellants' motion for summary judgment, the trial court stated that, although Jeanne may never face news as devastating as when she heard that appellee had been transfused with blood which had tested HIV positive, Jeanne's claim for negligent infliction of emotional distress must fail because there was no legal basis for the claim. The trial court cited *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 545 N.E.2d 83, in support of its decision.

Summary judgment is proper if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Summary judgment

---

**2.** See Assignment of Error No. 1.

should be awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. Civ.R. 56. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Jeanne asserts that she stated a claim for negligent infliction of emotional distress because, although she was not with appellee when appellee received the blood transfusion, she was with appellee when appellee was told that she had been transfused with blood that tested HIV positive. Consequently, Jeanne asserts that she was at the scene of the "accident" when appellee was told about the transfusion; that, as mother and daughter, she and appellee are close; and that the shock of hearing this news resulted in a direct emotional impact upon her for which she sought psychiatric help.

The essential issue in whether recovery is allowed on a claim of negligent infliction of emotional distress is reasonable foreseeability of the injury. *Burris, supra.* This court finds that, even construing the facts in a light most favorable to her, Jeanne has failed to state a claim for negligent infliction of emotional distress as a matter of law. This court can understand how Jeanne would have felt when she found out about appellee's disease, and the struggle she must have gone through in contemplating how to tell appellee about this fact; however, these facts do not state a claim for negligent infliction of emotional distress. Accordingly, this court finds that the trial court did not err in granting appellants summary judgment as a matter of law, and Jeanne's assignment of error is not well taken.

For the foregoing reasons, appellants' three assignments of error are overruled and Jeanne's one assignment of error in the cross-appeal is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and GREY, JJ., concur.

LAWRENCE GREY, J., of the Fourth Appellate District, sitting by assignment.