**WORLD DIAMOND, INC. et al., Appellants,**

v.

**HYATT CORPORATION et al., Appellees.**

[Cite as *World Diamond, Inc. v. Hyatt Corp.* (1997), 121 Ohio App.3d 297.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE10–1361.

Decided June 30, 1997.

298

*Karr & Sherman Co., L.P.A., Keith M. Karr* and *James L. Baum,* for appellants.

*Baker & Hostetler, Randall S. Rabe* and *David C. Levine,* for appellees.

TYACK, Presiding Judge.

On August 24, 1995, World Diamond, Inc., D & R Diamond, Inc., Brad Garman, and Lisa Garman filed a complaint in the Franklin County Court of Common Pleas against Hyatt Corporation and three unnamed John Doe defendants (collectively referred to as "Hyatt"). The plaintiffs set forth five claims for relief against Hyatt, including breach of contract/breach of a bailment contract, negligent misrepresentation, fraud, and negligence. The plaintiffs also requested a declaration as to the interpretation and constitutionality of and their rights under R.C. 4721.01, 4721.02, and 4721.03, Ohio's innkeeper liability statutes.

The suit arose out of incidents occurring at the Hyatt Regency Columbus on or about August 27, 1994. David Goldstein was the president of D & R Diamond, Inc., and World Diamond, Inc. (collectively referred to as "World Diamond"). Brad and Lisa Garman, husband and wife, and Goldstein were jewelry dealers

and were in Columbus for the Mid–American Jewelry Show being held at the Columbus Convention Center. The organizers of the jewelry show provided a safe for exhibitors to store jewelry and precious stones.

Goldstein arrived in Columbus on the night of August 25, 1994 and checked into his room at the Hyatt. He then attempted to deposit his jewelry and precious stones with the jewelry show security office, but it was closed. Goldstein went to the front desk of the Hyatt, told the clerk he was a guest registered for the jewelry show, and requested a safety deposit box. The desk clerk accompanied Goldstein to the safety deposit room, and Goldstein deposited his jewelry and precious stones in a safety deposit box.

Each safety deposit box requires two keys for entry. A master key is kept by the Hyatt, and the guest is given an individual key for the box.

The other plaintiffs, the Garmans, had secured the diamonds and precious stones they were exhibiting at the show with the show's security office. However, Ms. Garman deposited her and Mr. Garman's personal jewelry in a Hyatt safety deposit box.

On August 27, 1994, Goldstein and the Garmans discovered that their respective safety deposit boxes were empty, with no sign of forcible entry, and that their jewelry and precious stones were gone. As a result of these occurrences, the present suit was filed. The Garmans alleged a loss of $42,406, and World Diamond alleged a loss of $450,213.

On May 14, 1996, the trial court put on an order setting forth a schedule for the filing of cross-motions for partial summary judgment on the issues of the interpretation and constitutionality of R.C. 4721.01, 4721.02, and 4721.03. The parties filed their motions and memoranda in opposition. On August 2, 1996, the trial court rendered a decision, finding that the Supreme Court had already interpreted the relevant statutes and that such statutes were constitutional. Based upon its construction of R.C. 4721.01 and 4721.02, the trial court concluded that the plaintiffs were precluded from recovering in excess of $500. As a result, Hyatt was granted partial summary judgment.

A judgment entry was journalized on October 10, 1996. World Diamond and the Garmans ("appellants") have appealed to this court, assigning four errors for our consideration:

"*Assignment of Error No. 1*

"The trial court prejudicially erred in not interpreting R.C. § 4721.01 and § 4721.02 as eliminating liability as an insurer while maintaining liability for ordinary negligence or theft of an innkeeper.

"*Assignment of Error No. 2*

"The trial court prejudicially erred in finding that appellee complied with the requirements of R.C. § 4721.01 and that appellee did not enter into a special written arrangement pursuant to R.C. § 4721.02 since genuine issues of fact existed on this issue.

"*Assignment of Error No. 3*

"The trial court prejudicially erred, as a matter of law, in applying the wrong standard in determining the constitutionality of a statute affecting a fundamental right.

"*Assignment of Error No. 4*

"The trial court prejudicially erred in finding that the innkeeper liability statutes are constitutional when applied to eliminate liability and/or cap damages for the negligence or thefts of the innkeeper or his employees."

In order to grant a motion for summary judgment, the trial court must find, construing the evidence most strongly in favor of the nonmoving party, that there is no genuine issue of material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come only to a conclusion adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936, 942–943, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In their first assignment of error, appellants contend that the trial court erroneously interpreted R.C. 4721.01 and 4721.02. We note that although appellants included the interpretation of R.C. 4721.03 as an issue in their complaint, that statute has no application to the facts herein, and, thus, it is unnecessary to address its proper interpretation. As to R.C. 4721.01 and 4721.02, appellants assert that the trial court should have interpreted and this court should interpret those statutes to mean that innkeepers are no longer liable as at common law as complete insurers of guests' property but that innkeepers are liable for their or their employees' negligence or theft. Hyatt ("appellee") contends that the Supreme Court of Ohio has already decided this issue in *Chase Rand Corp. v. Pick Hotels Corp.* (1958), 167 Ohio St. 299, 4 O.O.2d 345, 147 N.E.2d 849, and that under the facts herein, appellees' liability is limited to $500 by the statutes.

Before a discussion of the statutes and case law at issue, we provide a brief background of the history of innkeeper liability. The common-law rule was that an innkeeper is practically an insurer of a guest's property. Therefore, the innkeeper was liable for any loss of the guest's property unless it was alleged and proven by the innkeeper that the loss was caused by an act of God, a public enemy, or the guest's negligence, or occurred while the property was in the

guest's exclusive custody and control. *Rarrick v. Browne* (1949), 151 Ohio St. 276, 39 O.O. 78, 85 N.E.2d 386, paragraph one of the syllabus. Such strict responsibility on the part of an innkeeper was the result of the public nature of an inn, the unsettled condition of the country in medieval England, and the meager facilities for travel. *Palace Hotel Co. v. Medart* (1912), 87 Ohio St. 130, 133–134, 100 N.E. 317, 318, citing Beale on Innkeepers, Sections 11 and 185.

The harsh common-law liability of an innkeeper was modified, however, by the Ohio legislature in 1860. *Palace Hotel* at 135, 100 N.E. at 318–319. Since their original passage, the innkeeper liability statutes have been amended very little and remain largely the same today. They consist of three sections, R.C. 4721.01, 4721.02, and 4721.03.

R.C. 4721.01 states:

"An innkeeper, whether a person, partnership, or corporation, having in his inn a metal safe or vault in good order suitable for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers, and bullion, and keeping on the doors of the sleeping rooms used by his guests suitable locks or bolts, and on the transoms and windows of such rooms suitable fastenings, and keeping a copy of this section printed in distinct type conspicuously suspended in the office, ladies' parlor or sitting room, barroom, washroom, and five other conspicuous places in such inn, or not less than ten conspicuous places in all, shall not be liable for loss or injury suffered by a guest, unless such guest has offered to deliver such property to such innkeeper for custody in such metal safe or vault, and the innkeeper has omitted or refused to take and deposit it in the safe or vault for custody and give the guest a receipt therefor."

R.C. 4721.02 states:

"An innkeeper shall not be obliged to receive from a guest for deposit in the safe or vault, property described in section 4721.01 of the Revised Code exceeding a total value of five hundred dollars, and shall not be liable for such property exceeding such value whether received or not. Such innkeeper, by special arrangement with a guest may receive for deposit in such safe or vault property upon such written terms as may be agreed upon. An innkeeper shall be liable for a loss of any such property of a guest in his inn caused by the theft or negligence of the innkeeper or his servant."

Appellants contend that statements set forth in the Supreme Court's opinion in *Rarrick, supra,* control and that in that opinion, the Supreme Court interpreted Sections 5981 and 5982 of the General Code (now R.C. 4721.01 and 4721.02) to mean that an innkeeper's common-law liability as an insurer was eliminated while liability for the innkeeper's negligence or own theft was retained. In *Rarrick,* a

guest's cash, watch, ring, baggage, and parcel checks were stolen from his hotel room. *Id.*, 151 Ohio St. at 277–278, 39 O.O. at 78–79, 85 N.E.2d at 387–388. The thief also used the baggage and parcel checks to take other property of the guest. The loss totaled over $500. *Id.*, 151 Ohio St. at 278, 39 O.O. at 79, 85 N.E.2d at 388.

The Supreme Court noted that under G.C. 5981 (R.C. 4721.01), the innkeeper would be relieved from liability for any loss unless something in G.C. 5982 (R.C. 4721.02) provided otherwise. *Id.*, 151 Ohio St. at 282, 39 O.O. at 81, 85 N.E.2d at 389–390. The plaintiff in *Rarrick* argued that the last sentence in G.C. 5982 (R.C. 4721.02) enabled a guest to recover losses of the type of property enumerated in G.C. 5981 (R.C. 4721.01) caused by the innkeeper's negligence. The last sentence of G.C. 5982, which is the same in present R.C. 4721.02, stated: "An innkeeper shall be liable for a loss of any such property of a guest in his inn caused by the theft or negligence of the innkeeper or his servant."

The Supreme Court held that when G.C. 5981 is operative, there is a loss of the type of property enumerated in G.C. 5981, and the property lost was not offered to the innkeeper for custody in the safe or vault, the innkeeper will be liable only if the loss was caused by the innkeeper's negligence or theft. *Id.* at paragraph five of the syllabus. The Supreme Court also stated that the $500 limitation in G.C. 5982 did not apply to losses caused by innkeeper theft or negligence. *Id.*, 151 Ohio St. at 285–286, 39 O.O. at 82–83, 85 N.E.2d at 391–392. The Supreme Court went on to note that it was not necessary to consider what the liability would be for the loss of property received by the innkeeper for deposit in the safe. *Id.* at 286, 39 O.O. at 82–83, 85 N.E.2d at 391–392.

The Supreme Court addressed related issues following the *Rarrick* decision in *Chase Rand Corp., supra.* The *Chase* case was decided almost ten years after *Rarrick.* In *Chase,* the plaintiff was a jewelry dealer, and its sales representative had traveled to Ohio for the purpose of displaying and selling diamonds and precious stones. *Id.*, 167 Ohio St. at 300, 4 O.O.2d at 345–346, 147 N.E.2d at 851. At the end of the work day, the sales representative had a discussion about securing his briefcase with an employee of the hotel where the sales representative was staying. The sales representative and the hotel employee later had different recollections about the content of that conversation, especially as to whether the discussion included the fact that the briefcase contained diamonds. By agreement, the briefcase was left in a "vault" that was secured only part of the time. Hotel supplies were also stored in the "vault," so a variety of employees of the hotel had access to the "vault." The Supreme Court of Ohio noted that the sales representative could have broken up the contents of his briefcase into packages that could be secured in safety deposit boxes present in the "vault." The Supreme Court of Ohio, at a time before Ohio had comparative

negligence and when contributory negligence barred recovery for the innkeeper's negligence, noted in paragraph six of the syllabus:

"Where a guest deposits with an innkeeper a case containing precious stones of the value of $32,000, the guest's failure to disclose to the innkeeper the value of such contents is negligence as a matter of law precluding recovery from the innkeeper, in the event of loss, of any amount of such value in excess of that limited by Sections 4721.02 and 4721.03, Revised Code."

The Supreme Court of Ohio then remanded the case for a determination of issues related to R.C. 4721.03. Thus, the *Chase* case was clearly decided on negligence law principles by the Supreme Court of Ohio.

In *Chase*, the Supreme Court quoted R.C. 4721.01 and 4721.02 and then labeled the specific property mentioned in these sections. "4721.01 property" consists of the property listed in that section, which includes money, jewelry, and precious stones. *Id.*, 167 Ohio St. at 305, 4 O.O.2d at 348, 147 N.E.2d at 854. "4721.02 property" consists of all "4721.01 property" that is not in excess of $500 in value, and any other property specially deposited with the innkeeper upon such written terms as agreed upon. *Id.*

The Supreme Court cited the *Rarrick* decision and its holding that an innkeeper was liable for loss of "such property," as used in the last sentence of R.C. 4721.02, if negligence was proved. *Id.*, 167 Ohio St. at 306, 4 O.O.2d at 348–349, 147 N.E.2d at 854–855. The Supreme Court in *Chase* noted, as it did in *Rarrick*, that a previous version of the last sentence in R.C. 4721.02 stated "above enumerated articles" instead of the present "such property." *Id.*, 167 Ohio St. at 307, 4 O.O.2d at 349–350, 147 N.E.2d at 855. The Supreme Court in *Chase* interpreted this change to mean that the last sentence in R.C. 4721.02, "An innkeeper shall be liable for a loss of any of *such property* of a guest in his inn caused by the theft or negligence of the innkeeper or his servant," referred to the last antecedent sentence. *Id.* This last antecedent sentence is the provision whereby an innkeeper and a guest may make a special arrangement for deposit in the vault or safe.

Pursuant to these conclusions, the Supreme Court held at paragraphs three and four of the syllabus in the *Chase* case:

"3. Under the provisions of Section 4721.02, Revised Code, an innkeeper is not required to receive for deposit in such safe or vault items enumerated in Section 4721.01, Revised Code, in excess of $500 in value, and he is not liable for such property exceeding such value, whether received or not, in the absence of a special arrangement.

"4. An innkeeper may, by special arrangement with a guest, receive for deposit in such safe or vault any property upon such terms as may be agreed

upon, and the innkeeper is liable for the loss of any such property so received, where the loss is caused by the theft by or negligence of the innkeeper or his servant."

Thus, the Supreme Court in *Chase* held that under R.C. 4721.01 and 4721.02, an innkeeper is not liable for the kind of property enumerated in R.C. 4721.01 valued at over $500 whether received by the innkeeper or not unless a special arrangement has been made. When a special arrangement has been made, the innkeeper is liable for the loss of any property so received when the loss is caused by the innkeeper's negligence or theft. The syllabi in *Chase* do not specify that the "special arrangement" must be accompanied by a written document specifying terms for the "special arrangement."

The syllabus of an opinion issued by the Supreme Court is the law of the case, and all lower courts are bound to adhere to the principles set forth therein. *State ex rel. Heck v. Kessler* (1995), 72 Ohio St.3d 98, 102–103, 647 N.E.2d 792, 796–797. All trial courts and intermediate courts of appeals are charged with accepting and enforcing the law as promulgated by the Supreme Court and are bound by and must follow the Supreme Court's decisions. *Consol. Rail Corp. v. Forest Cartage Co.* (1990), 68 Ohio App.3d 333, 341, 588 N.E.2d 263, 268, citing *Thacker v. Bd. of Trustees of Ohio State Univ.* (1971), 31 Ohio App.2d 17, 60 O.O.2d 65, 285 N.E.2d 380. The body of the opinion is considered dictum.

The differences between the facts in the *Chase* case and the present case are significant. In the *Chase* case, safety deposit boxes were available, but unused. Here, safety deposit boxes were used and the thefts occurred from those safety deposit boxes. The Hyatt could be found to have made a special arrangement to accept the jewelry by in fact accepting the jewelry for storage in its safety deposit boxes. The safety deposit boxes in question were positioned behind the registration desk. The contents of the safety deposit boxes were removed without apparent damage to the safety deposit boxes. Construing the evidence before the trial court most favorably to the appellants, employees of the Hyatt could be found negligent in failing to be aware of what was occurring a short distance away in the area where they had accepted valuables for safekeeping. Employees of the Hyatt also could be found to have been involved in the theft, again applying the standard for construing the evidence applicable at the summary judgment stage. Thus, applying the *Chase* case, a special arrangement could have occurred without benefit of a defining written document, and a genuine issue of material fact existed as to negligence and/or theft by Hyatt employees.

We, therefore, sustain the first assignment of error.

The second assignment of error involves some similar issues and has two parts. The first part addresses the issue of compliance with R.C. 4721.01 by Hyatt. The second part addresses issues regarding the amount of writing, if any, necessary for a special arrangement.

In order to modify the common-law liability of an innkeeper and assert the limitations set forth in R.C. 4721.01 and 4721.02, the innkeeper must allege and prove compliance with each of the requirements set forth in R.C. 4721.01. *Rarrick* at paragraph four of the syllabus. Again, R.C. 4721.01 provides:

"An innkeeper * * * having in his inn a metal safe or vault in good order suitable for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers, and bullion, and keeping on the doors of the sleeping rooms used by his guests suitable locks or bolts, and on the transoms and windows of such rooms suitable fastenings, and keeping a copy of this section printed in distinct type conspicuously suspended in the office, ladies' parlor or sitting room, barroom, washroom, and five other conspicuous places in such inn, or not less than ten conspicuous places in all, shall not be liable for loss or injury suffered by a guest * * *."

Appellants set forth four allegations of appellee's failure to comply with R.C. 4721.01. The first is that the copy of the statute displayed in the hotel rooms was not in "distinct type." The purpose of this requirement is obviously to give notice to guests of the limitation of liability. Here, appellants saw and read the notice. (See affidavit of David Goldstein and May 5, 1996 affidavit of Lisa Garman.) Further, we find as a matter of law that the notice met the "distinct" requirement in R.C. 4721.01.

On the inside door of each hotel room at the Hyatt Regency Columbus is a notice that contains certain information and a map of the floor. The text of all three innkeeper statutes is set forth on this notice. It is found directly below the map and is set off from the rest of the information by a box. All of the other information is merely printed in columns with their headings in large, capital letters. The innkeeper statutes are enclosed in a large box. In relatively very large, bold, capital letters are the words "HOTEL AND MOTEL LAWS." Below this heading, also contained within the box, are the statutes. They are printed in small type; however, the headings to each statute are in larger, bold, capital letters.

We find the above notice sufficient to comply with the requirement in R.C. 4721.01. As a whole, the notice as to the innkeeper statutes was "distinct." While the actual text of the statutes, other than the headings of the statutes, which were distinct, was not necessarily distinct from the other information on

the page, the notice of the statutes as a whole was set apart and distinct from the other information. We find no genuine issue of material fact as to this issue.

Appellants next contend that appellee's notice altered the statutory wording. R.C. 4721.01 requires that an innkeeper keep "a *copy* of *this* section" posted in certain areas of the hotel. (Emphasis added.) Appellants point out various alterations from the statutory wording in R.C. 4721.01, 4721.02 and 4721.03. We note first that R.C. 4721.01 requires only that a copy of R.C. 4721.01 be displayed. See, also, *Rarrick,* 151 Ohio St. at 280–281, 39 O.O. at 80–81, 85 N.E.2d at 389, and *Chase,* 167 Ohio St. at 303, 305, 4 O.O.2d at 347, 348, 147 N.E.2d at 852–853, 854. Appellee displayed all three innkeeper statutes. The issue, therefore, is whether appellee's posting of R.C. 4721.01 was sufficient.

The copy of R.C. 4721.01 displayed in appellee's hotel was almost verbatim. In the statute, there is a comma after the word "partnership" and after the word "corporation." These commas were omitted in appellee's notice. In addition, R.C. 4721.01 reads "negotiable or valuable papers, and bullion, *and* keeping on the doors." (Emphasis added.) The word "and" highlighted above was omitted by appellee. Last, the word "therein" was added to the statute, specifically, the part that reads "or not less than ten conspicuous places in all [therein]."

The above changes to R.C. 4721.01 were few, immaterial, and consistent with the meaning of the statute. Hence, we find no material alteration and conclude that appellee met the requirement of posting R.C. 4721.01.

Appellants also point out alterations in appellee's posting of R.C. 4721.02 and 4721.03. As noted above, appellee was not required to post these statutory sections. However, because appellee did, we have examined the alterations to make sure they did not prejudice appellants. Again, the alterations in the statutory wording were scant and did not alter the statutes' meaning. Hence, there was no prejudice.

Appellants' next argument regarding the requirements in R.C. 4721.01 is that appellee included another statement on the notice posted in the hotel rooms that conflicted with the posted statutory sections. Appellants contend that such conflicting statement precluded appellee Hyatt from using the protections of the statutes.

On the same notice posted by appellee, above the boxed statement containing the innkeeper statutes, was a statement that read:

"SAFETY DEPOSIT BOXES

"Please do not leave money or valuables in your room. We provide safety deposit boxes for your use in our Front Office (Lobby Level 1) at no charge.

Under Ohio law, the hotel cannot be responsible for loss of valuables—money, jewelry, precious stones, documents, etc.—unless the articles have been properly secured in these vaults. For guests with items too large for the safety deposit boxes, the hotel will be happy to secure the door by means of the security double lock located on your door. This will prevent the door from being opened by a regular room key, which adds considerably to the safety of the room. Alternatively, our bell staff will be pleased to secure items in the baggage storeroom located on the Lobby level. Unless these courses of action are taken, the hotel cannot accept liability in the unlikely event of a theft."

This statement could be viewed as an invitation to place valuables in a safety deposit box maintained by the Hyatt. The acceptance of such an invitation could constitute a special arrangement for purposes of R.C. 4721.01 and 4721.02. Such a special arrangement is consistent with R.C. 4721.01, not in conflict.

In their last argument regarding the requirements in R.C. 4721.01, appellants contend that R.C. 4721.01 requires that appellee give guests a receipt for items deposited and that appellee failed to give appellants a receipt.

As indicated above, an innkeeper must comply with the requirements contained in R.C. 4721.01 in order to fall under the protections of the innkeeper statutes. *Rarrick* at paragraph four of the syllabus. These requirements are listed at the beginning of the statute:

"An innkeeper * * * having in his 'inn a metal safe or vault in good order suitable for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers, and bullion, and keeping on the doors of the sleeping rooms used by his guests suitable locks or bolts, and on the transoms and windows of such rooms suitable fastenings, and keeping a copy of this section printed in distinct type conspicuously suspended in the office, ladies' parlor or sitting room, barroom, washroom, and five other conspicuous places in such inn, or not less than ten conspicuous places in all, shall not be liable for loss or injury suffered by a guest * * *."

The giving of a receipt is mentioned only at the end of the statute:

"An innkeeper * * * shall not be liable for loss or injury suffered by a guest, *unless such guest has offered to deliver such property to such innkeeper for custody in such metal safe or vault, and the innkeeper has omitted or refused to take and deposit it in the safe or vault for custody and give the guest a receipt therefor.*" (Emphasis added.)

 We do not view the issue of the giving of a receipt as determinative of the liability of the "innkeeper." Read literally, the statute requires an innkeeper to give a receipt when the innkeeper has refused to take possession of the goods

to be stored. The present case does not involve a refusal of the Hyatt to give a receipt, but a *failure* of appellee to give a receipt for items it took into its possession in safety deposit boxes. The failure in regard to the receipt is arguably the fault of both sets of parties. Appellee did not offer a detailed receipt and the parties who stored valuables did not request one.

Again, we view R.C. 4721.01 as relieving innkeepers' liability based upon a status as an insurer of property. However, R.C. 4721.01 does not bar recovery under R.C. 4721.02 where losses are occasioned by negligence of an innkeeper or by theft by employees of an innkeeper.

The second portion of the second assignment of error addresses issues related to what written documents, if any, must be in existence as to an agreement for purposes of R.C. 4721.02. As noted above, the facts of the present case indicate that appellee could be found to have made a "special arrangement" to secure the jewelry and valuables by inviting guests to place valuables in its safety deposit boxes and then by taking possession of the jewelry and valuables in its safety deposit boxes. However, appellee did not at the time of taking possession of the valuables enter into a written agreement either increasing or limiting its liability for the items being stored. Where no specific written agreement regarding terms of a special arrangement for securing of the valuables is entered into, the parties are left to resolve liability issues based upon negligence principles and upon the responsibility of an innkeeper for theft by its employees. Again, we note the last line of R.C. 4721.02: "An innkeeper shall be liable for a loss of any such property of a guest in his inn caused by the theft or negligence of the innkeeper or his servant."

As a separate assignment of error, the second assignment of error is overruled.

Turning to the third and fourth assignments of error, if R.C. 4721.02 capped recovery at $500 for a party where negligence of an innkeeper was demonstrated, serious issues of constitutionality would be raised. See, for instance, *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 598 N.E.2d 1174; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 633 N.E.2d 504; and *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397. However, we do not view R.C. 4721.02 as capping recovery based upon negligence or theft in the absence of a comprehensive written agreement.

We believe that the legislature of Ohio had the power to change the common law to the extent that innkeepers were formerly insurers of the safety of any property left in hotel or motel rooms, while leaving liability for theft and/or negligence in place. We, therefore, find no constitutional infirmity in R.C. 4721.01 and 4721.02 as we construe those statutes and as the statutes apply to the fact of this case.

As a result, the third and fourth assignments of error are overruled.

In sum, we sustain the first assignment of error and overrule the second, third, and fourth assignments of error. We vacate the judgment of the trial court granting summary judgment to the defendants-appellees and remand the case for further proceedings consistent with this opinion.

*Judgment vacated*
*and cause remanded.*

DESHLER, J., concurs separately.

BOWMAN, J., dissents.

DESHLER, Judge, concurring separately.

While I concur in the judgment of reversal, I do so under a more limited approach as it relates to summary judgment.

The trial court concluded that a "special arrangement" was not consummated between plaintiffs and defendant. The absence of such agreement would allow the application of R.C. 4721.02, limiting the liability of the defendant, as an innkeeper, to $500.

The trial court also found, in its consideration of cross-motions for summary judgment, that the case of *Chase Rand Corp. v. Pick Hotels Corp.* (1958), 167 Ohio St. 299, 4 O.O.2d 345, 147 N.E.2d 849, was directly applicable to the instant case.

The following statement in the trial court's decision, upon considering cross-motions for summary judgment, is flawed from the standpoint that a genuine issue of material fact remained for resolution as to whether a special arrangement existed between the parties that would directly affect the limit of liability pursuant to statute. The trial court stated, "Because plaintiffs did not make a written, 'special arrangement' as required by statute, plaintiffs are precluded from recovering the jewelry's value in excess of $500." The establishment of the existence of a "special arrangement" is not limited to a writing, and considering all the evidence before the trial court, there remained a genuine issue of fact as to whether a special arrangement had been effected by the conduct of the parties. Thus, summary judgment on this issue was not appropriate. If such an agreement took place, then plaintiffs would be entitled to proceed, and principles of comparative negligence would apply. The *Chase Rand* case denied plaintiff recovery because a finding at that time of contributory negligence on the part of the guest barred any recovery. The *Chase Rand* case is distinguishable from the case *sub judice* in this aspect. If upon trial it is determined that no special

arrangement was entered into between the parties, then the plaintiffs would be precluded from recovery. On the other hand, the doctrine of comparative negligence would apply if it is concluded that a special arrangement was entered into between the parties.

I further concur that the constitutional challenges raised by plaintiffs are without merit as there has been no demonstration that the pertinent statutes suffer from any constitutional infirmities.

BOWMAN, Judge, dissenting.

Being unable to agree with the majority's disposition of the first assignment of error, I respectfully dissent. In this case, no special arrangement was made between appellants and the Hyatt, and, thus, I would find that, pursuant to R.C. 4721.01 and 4721.02, the innkeeper statutes, the Hyatt's liability is limited to $500.

In *Chase Rand Corp. v. Pick Hotels Corp.* (1958), 167 Ohio St. 299, 4 O.O.2d 345, 147 N.E.2d 849, the court held, at paragraph four of the syllabus:

"An innkeeper may, *by special arrangement with a guest,* receive for deposit in such safe or vault any property *upon such terms [and conditions] as may be agreed upon,* and the innkeeper is liable for the loss of any such property so received, where the loss is caused by the theft by or negligence of the innkeeper or his servant." (Emphasis added.)

A special arrangement contemplates an agreement that is reached between the innkeeper and the guest, other than simply depositing valuables in a safety deposit box and receiving a claim ticket. For a special arrangement between the innkeeper and the guest to occur, the guest must disclose to the innkeeper the value of the property being placed with the innkeeper for safekeeping. An innkeeper is not required to accept property in excess of $500 in value for safekeeping, see paragraph three of the syllabus of *Chase Rand,* and, thus, the innkeeper and guest must agree to an arrangement imposing greater liability upon the innkeeper than that provided for in the statutes. Although dicta in *Chase Rand* suggest the contrary, the special arrangement agreed to by the guest and the innkeeper would not necessarily have to be in writing, even though a writing memorializing the special arrangement would be beneficial to both parties. In addition, it should be noted that a receipt, or lack thereof, is not determinative of the liability of the innkeeper.

Unlike the majority, I do not find that a notice on the back of a hotel room door offering safety deposit boxes for use by the guests is an invitation by the hotel to the guests, the acceptance of which constitutes a special arrangement. The safety deposit box notice simply makes the guests aware that safety deposit

boxes are available for their use. The notice also informs guests that the hotel will not be liable for certain "valuables" unless they are placed in a safety deposit box, although the extent of the hotel's liability is not mentioned. In order to determine the extent of the hotel's liability, the guest would also have to read the innkeeper statutes located below the safety deposit box notice, which provide that, absent a special arrangement, the hotel's liability is limited to $500.

In my view, a special arrangement involves a discussion between the innkeeper and the guest regarding the items the guest wants to deliver to the hotel for custody in its safe or vault. Such a discussion protects both parties because it not only notifies the hotel of the contents of the property and its value, thus giving the hotel the option to decline responsibility, but also protects the guest who puts the hotel on notice that something of greater than $500 value is being given to it for safekeeping and allows the hotel to obtain appropriate insurance coverage. See *Chase Rand,* 167 Ohio St. at 308–309, 4 O.O.2d at 350, 147 N.E.2d at 855–856.

In this case, appellants simply deposited their jewelry and precious stones in the Hyatt's safety deposit boxes without disclosing anything about the property, including its value, and without discussing the contents of the safety deposit boxes with the Hyatt. Thus, no special arrangement between appellants and the Hyatt was made concerning the property the hotel was holding for appellants. Accordingly, I would find that, pursuant to R.C. 4721.01 and 4721.02, as interpreted by the Ohio Supreme Court in *Chase Rand,* the Hyatt is liable to appellants for up to $500, and I would overrule appellants' first assignment of error. The remaining assignments of error would then become moot.