OPINION
Defendant, Dr. Michael Gregg, appeals from a judgment for Shirley and John Wurts on their claims for medical malpractice.
Shirley Wurts was diagnosed as suffering from breast cancer in 1975. A double mastectomy was performed and silicone implants were inserted in both breasts for reconstructive purposes.
In 1994, Shirley Wurts complained to her surgeon, Dr. Percy, of pain and tightness in both breasts. Concerned that she may have experienced a rupture of the silicone implants, Dr. Percy ordered an MRI examination. Dr. Percy advised Shirley Wurts that ruptures of the silicone implants would require their replacement with saline implants, because the Food and Drug Administration had banned the further use of silicone implants as unsafe.
An MRI examination was performed at Miami Valley Hospital on October 13, 1994. The results of the examination were reviewed by Defendant, Dr. Michael Gregg, a radiologist. Dr. Gregg diagnosed those results as indicating a "likely" rupture of the implants in both breasts, and he so reported to Dr. Percy.
Based on Dr. Gregg's diagnosis, Dr. Percy surgically removed both silicone breast implants on October 25, 1994, replacing them with saline implants. Upon examination, however, it was determined that the silicone implants had not ruptured.
Shirley Wurts experienced complications following the surgery. Because of a separation of the surgical scar, an additional surgery was required, during which Dr. Percy removed the saline implant in Mrs. Wurts' left breast. The left breast is now disfigured, causing Mrs. Wurts pain in the neck and shoulder as well as problems with posture and weight imbalance.
Shirley Wurts and her husband, John Wurts, filed this action alleging medical malpractice by Dr. Gregg with respect to his diagnosis. Their claims were eventually tried to a jury, which awarded Shirley Wurts $215,000 in damages and John Wurts $25,000. Dr. Gregg filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING PLAINTIFFS' EXPERT WITNESS IN DIRECT EXAMINATION TO IDENTIFY AND TESTIFY ABOUT JOURNAL ARTICLES FROM THE MEDICAL LITERATURE TO SUPPORT THE EXPERT'S OPINION THAT DEFENDANT DEPARTED FROM THE STANDARD OF CARE OF A PHYSICIAN SPECIALIZING IN RADIOLOGY.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING IN EVIDENCE JOURNAL ARTICLES FROM THE MEDICAL LITERATURE ON
 THE SUBJECT OF MAGNETIC RESONANCE IMAGING OF BREAST IMPLANTS.
Both of the foregoing assignments of error concern the admissibility pursuant to Evid.R. 706 of evidence which the Plaintiffs offered through the testimony of their expert witness, Dr. Gia DeAngelis. Therefore, they will be considered together.
Prior to trial, the Defendant had filed a motion in limine
asking the court to prohibit Dr. DeAngelis from making reference in her testimony to any medical treatises or literature on which she relied in forming an expert opinion concerning Dr. Gregg's alleged negligence. The Defendant based his request on Evid.R. 706.
The trial court declined to make the broad liminal order that the Defendant requested. Instead, the court ordered that Dr. DeAngelis would be permitted to testify that she had reviewed specific articles in various medical journals to acquire her expert knowledge concerning MRI diagnosis of breast implant failures, and that she relied on those articles to form whatever opinion she might give. However, pursuant to Evid.R. 706, the witness would not be allowed to recite any statements or opinions in those articles in her direct testimony, and the articles themselves would not be admitted.
At common law, medical textbooks and treatises were not admissible in Ohio as proof of the truth of the statements and opinions contained therein. Piotrowski v. Corey Hospital (1961),172 Ohio St. 61. The primary concern of that exclusion was the hearsay nature of such evidence. "By allowing a treatise to be used as substantive evidence, a court would, in effect, be allowing the author of that work to testify without first being required to take an oath to substantiate the assertions made and without being subject to cross-examination by the adverse party." Weissenberger, Ohio Evidence, Section 706.2, p. 344.
These same hearsay considerations do not apply when medical textbooks or treatises are used to impeach an expert on cross-examination, at least for the limited purpose of challenging the witness' credibility. If the witness admits that the particular source is authoritative and that the witness has relied on it to form an opinion given, the cross-examiner may exploit any variances between the source and the expert's opinion or basis for it to impeach the expert's credibility.
Evid.R. 706 incorporates the foregoing concepts, and provides:
Learned Treatises for Impeachment
 Statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art are admissible for impeachment if the publication is either of the following:
 (A) Relied upon by an expert witness in reaching an opinion;
 (B) Established as reliable authority (1) by the testimony or admission of the witness, (2) by other expert testimony, or (3) by judicial notice.
 If admitted for impeachment, the statements may be read into evidence but shall not be received as exhibits.
Three features of Evid.R. 706 are relevant of the issues presented by the Defendant-Appellant's first and second assignments of error.
First, by making statements published in treatises and other authoritative works admissible for impeachment, Evid.R. 706 restricts their use to cross-examination and the proceedings thereafter, prohibiting their use in the direct testimony of an expert witness.
Second, Evid.R. 706 prohibits the introduction of the materials as exhibits, permitting instead that they may be "read into evidence." "This restriction is designed to prevent the trier of fact from misunderstanding or misapplying the evidence as a result of its examination in the jury room." Weissenberger,supra, Section 701.6, p. 343.
Third, Evid.R. 706 applies to "statements contained in" treatises and other sources, not to other matters concerning them. This limits application of the rule to evidence of a substantive nature offered to prove or disprove a matter in issue. Mere references to studies by other experts in a field as a basis of the "scientific, technical, or other specialized knowledge" which Evid.R. 702 requires of an expert witness does not violate Evid.R. 706. That is because a distinction exists between an expert's opinion which has incorporated the scholarly views of others and the expert's recitation of the published opinions or conclusions of experts, which is not permitted. Beavercreek Local Schools v.Basic, Inc. (1991), 71 Ohio App.3d 669, Defendant-Appellant's first assignment of error concerns statements that Dr. DeAngelis made in her direct testimony in response to questions posed by Plaintiff's counsel. Dr. DeAngelis testified that, with respect to MRI interpretation of possible breast implant ruptures, the "peer review literature" defined the standard of conduct which the examining radiologists duty of care required.[1] She further testified that she was familiar with that peer review literature, and upon being asked by Plaintiff's counsel she identified a number of such works by title, publication, and author. Defendant had objected to the line of inquiry before the witness gave that testimony, but the trial court overruled the objection.
We find no error in the ruling which the trial court made. Dr. DeAngelis was not asked what statements were made by experts in the literature to which she referred. Instead, she was asked to identify, and she only identified, the literature on which she relied to form an opinion. She also stated that, with respect to the standard of conduct required, those sources are "authoritative." Her testimony probably put a scholarly gloss on Dr. DeAngelis' subsequent opinion. It also set up for cross-examination use any variances between her opinion and statements made in those sources. However, her direct testimony did not contain those statements or references to them, avoiding the hearsay problem that Evid.R. 706 is designed to prevent., Plaintiff-Appellant's second assignment of error concerns evidence that Plaintiff used to illustrate Dr. DeAngelis' opinion that Dr. Gregg was negligent in the diagnosis that he made, evidence that was offered in her direct testimony and admitted into evidence as exhibits, over Defendant's strenuous objections.
Dr. DeAngelis opined that Dr. Gregg was negligent because, upon examining the MRI performed to determine whether Mrs. Wurts' silicone implants had ruptured, Dr. Gregg failed to recognize the difference between a "linquine sign," which indicates a rupture, and a "radial fold," which does not. Dr. DeAngelis testified that Mrs. Wurts' MRI indicated a radial fold, and she illustrated the difference between that and a linguine sign for the jury with photographs. The photographs, according to Dr. DeAngelis, were copies of ones that appear in some of the peer review literature that she had identified as authoritative. Further, the copies bore legends identifying the specific source from which each photograph was obtained., Plaintiffs offered the photographs as exhibits at the close of their case-in-chief. The Defendant objected. The trial court admitted the photos as exhibits, but required the parties to redact information identifying the sources from which the photos were obtained. When the photos were admitted as exhibits, the title of the articles were removed but the date of each article and the name of its author remained.
"Generally, photographs are proper evidence to supplement the testimony of a witness where the subject matter of the testimony is difficult to portray verbally without such additional aids, or where the jury can be given a better understanding of the physical facts with which they are concerned." Richardson, Modern Scientific Evidence (1961), Section 16.8. The Plaintiffs used photographs depicting the "linguine sign" and "radial fold" about which Dr. DeAngelis testified in support of the opinion she offered. The requirements of Evid.R. 706 are implicated only if the photographs constitute "[s]tatements contained in published treatises, periodicals, or pamphlets on a subject of * * * medicine." Id.
The photographs unquestionably concerned a subject of medicine. Further, Dr. DeAngelis identified them as copies of photographs contained in published treatises or periodicals that she had identified as authoritative works on MRI diagnosis. Therefore, the photos are within the coverage of Evid.R. 706 if they are "statements."
Ordinarily, and certainly for purposes of Evid.R. 706, astatement is a verbal assertion concerning a fact or condition which is offered to prove or disprove a matter in issue. Pictorial representations may likewise be statements when they are offered as direct evidence for that purpose. For example, photographs of the same location taken at different times are statements concerning any differences which they depict.
Photographs may also be used to augment the testimony of a witness when they are offered as typical and illustrative of a matter about which the witness testifies. They are not then direct evidence probative of the matter or issue involved, but merely supplemental to other evidence offered. Whether a photograph or other reproduction may be used as supplemental evidence is within the sound discretion of the trial court.
Here, Dr. DeAngelis used the photographs to illustrate for the jury the differences between a linguine sign and a radial fold. The photographs augmented the jury's understanding of those differences. However, they were not independent proof of Dr. Gregg's alleged negligence in failing to recognize those differences when he interpreted Mrs. Wurts' MRI. Proof of that proposition required the opinion of Dr. DeAngelis that Dr. Gregg's failure caused his diagnosis to fall below the standard of conduct which his duty of care requires. Therefore, for purposes of Evid.R. 706, the photographs were not "statements," and their use and introduction as exhibits was not prohibited.
It was not necessary for Dr. DeAngelis to identify the sources from which the photographs were obtained in order to use them as she did. That could have been accomplished by her own identification of the conditions they depicted. Her association of the photos with sources she said were "authoritative," and which she said form the "standard of care," implicated the coverage of Evid.R. 706. However, as the photographs were used, they were essentially neutral in relation to the matter in issue, which was whether Dr. Gregg was negligent in failing to distinguish the conditions depicted in them when he made his diagnosis. Therefore, we find no error in their use or admission.
The first and second assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON MITIGATION OF DAMAGES., Plaintiff, Shirley Wurts, testified regarding the problems with weight imbalance, posture, and neck and shoulder pain she has experienced as a result of being left with a saline implant in her right breast only. Dr. Buchele testified for Defendant that Mrs. Wurts could have silicone implants reinserted in both breasts. Based upon that evidence, Defendant requested a jury instruction that Plaintiff is not entitled to an award for injuries that Defendant caused if Plaintiff failed to mitigate or lessen her damages through corrective surgery. The trial court refused to give Defendant's requested instruction.
A jury charge must be a distinct and unambiguous statement of the law as applicable to the facts before the court. In submitting a case to a jury, the court must "separate and definitely state . . . the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require," Marshall v. Gibson (1985), 19 Ohio St.3d 10,12, quoting Baltimore Ohio R.R. v. Lockwood (1905), 72 Ohio St. 586, paragraph one of the syllabus. Failure to give a requested instruction which is a correct statement of the law and relevant to a claim or defense the jury is required to determine is reversible error if the omission is prejudicial to the party proffering the request. Hammerschmidt v. Mignogna (1996),115 Ohio App.3d 276.
 If the nature of any injury caused by the negligent or wrongful act of another is such as to render medical or surgical treatment reasonably necessary or expedient, it is generally held to be the duty of the person injured to use ordinary and reasonable diligence to secure the medical or surgical aid of a physician or surgeon of ordinary skill and experience.
30 Ohio Jurisprudence 3d, Damages, Section 23, p. 31. A plaintiff's failure to secure such treatment is an affirmative defense to a damages claim. The burden to plead and prove that affirmative defense is on the defendant who would have the court instruct the jury concerning the plaintiff's duty of mitigation.State ex re. Martin v. Columbus (1979), 58 Ohio St.2d 261.
Any defensive matter in the nature of a confession and avoidance, such as mitigation of damages, is an affirmative defense. It admits for pleading purposes only that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").
Civ.R. 8(C), which sets out a non-exhaustive list of affirmative defenses, requires a defendant to affirmatively set forth in his answer any affirmative defense he may have to the plaintiff's claim for relief. If an affirmative defense is not pleaded in the answer or raised by motion, it is waived and the defendant may not seek later to prove it over the plaintiff's objection. Hoover v. Sumlin (1984), 12 Ohio St.3d 1.
Notice is the purpose of the requirement that an affirmative defense be affirmatively pleaded, because a plaintiff will ordinarily be required to secure evidence to rebut it. That concern has particular application when a claim is made that the plaintiff failed to resort to corrective surgery, because expert medical testimony will probably be required to rebut the claim.
In arguing that the trial court erred when it failed to give the mitigation of damages instruction that he had requested, Defendant points to the testimony of his expert, Dr. Buchele, a plastic surgeon. Dr. Buchele did not treat or examine Plaintiff. When asked what treatment options would be available to her, Dr. Buchele testified that if Plaintiff consulted him,
 "* * * it would depend on what her complaints were. So I would listen to her for quite a while. I would try and see if we had a technology that was going to be able to be responsive to her complaints. So, for example, if her primary complaint is pain, I think she may still have pain, regardless of what new or old implants take place.
 If her complaint is texture, then I believe we could just jump through those legal hoops to be able to put gel implants in. If her complaint is shape, then we may talk about whether a saline device or a gel device is the best device to try and correct the shape. So we have to kind of tailor the treatment to what the patient's complaints are, but again we have a laundry list of options that need to be available to the patient and discussed with the patient." (T. 496).
In order to find that the plaintiff failed to mitigate her damages by resort to available corrective surgery, a jury must find that, under all the facts and circumstances, a reasonable person in the plaintiff's position would have resorted to the corrective surgery involved. That finding requires evidence which demonstrates a probability that corrective surgery would have averted or ameliorated the consequences of which the plaintiff complains.
We believe that Dr. Buchele's testimony, quoted above, is insufficient to demonstrate a probability that Plaintiff could have avoided the consequences of the Defendant's alleged malpractice by resort to corrective surgery. It does no more than state a "laundry list" of options that could be considered. Moreover, Dr. Buchele's suggestion that silicone implants could be reinserted necessarily assumes certain facts not supported by the evidence in this case. For instance, the evidence does not demonstrate that the FDA would approve, as an exception to its general ban, the reinsertion of silicone gel implants for this Plaintiff, or that such implants are still available and could readily be acquired. In short the evidence presented, including Dr. Buchele's testimony, is insufficient to demonstrate a probability that Plaintiff could have avoided the consequences of Defendant's alleged malpractice by resort to corrective surgery.
Even had Dr. Buchele's testimony been sufficient to warrant the instruction that defendant requested, we believe that Defendant's failure to plead mitigation of damages as an affirmative defense, or to otherwise move that he be allowed to amend his answer to plead it after Dr. Buchele testified, operated to waive any error involved. Plaintiffs were entitled to some reasonable notice of this defense and its theory in order to prepare for it, and they had none. Defendant argues that the requirements of Civ.R. 8(C) in that regard are superseded in this instance by Civ.R. 15(B), because Plaintiffs' failure to object to Dr. Buchele's testimony permitted the court to conclude that the evidence concerning mitigation of damages defense had been presented by the consent of the parties, and thus treat the defense as though it had been pleaded. However, that exception also requires some notice to the plaintiff of the defendant's intention in that regard, and no prejudice to the plaintiff as a result. Hoover v. Sumlin, supra. This record does not offer that support., Defendant's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO GRANT DR. GREGG'S MOTIONS FOR A DIRECTED VERDICT.
A motion for a directed verdict presents a question of law; whether the evidence on all the necessary elements of the Plaintiff's claim is legally sufficient to allow the case to go to the jury. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116. In ruling upon the motion the trial court does not weigh the evidence or assess the credibility of the witnesses. Id. Rather, the evidence must be construed most strongly in favor of the non-moving party, and where there is substantial evidence supporting the non-movant's case, on which reasonable minds might reach different conclusions, the motion must be denied. Wells v.Miami Valley Hospital (1993), 90 Ohio App.3d 840.
 In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.
 The standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field; therefore, geographical considerations or circumstances control neither the standard of the specialist's care nor the competence of the testimony of an expert in that specialty.
Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, Syllabus by the court, paragraph one and two., Defendant first argues that Plaintiff failed to establish the standard of conduct required of a radiologist who reviews and interprets breast implant MRI's, because Plaintiff's expert, Dr. DeAngelis, did not specifically state that she is familiar with that standard of conduct.
DeAngelis testified that she is a board certified radiologist who spends ninety percent of her time in clinical practice and that she specializes in MRI's. Dr. DeAngelis has been involved with breast MRI's since 1990. She has published peer review articles in medical literature on breast implant MRI's, and she supervises a grant at the University of Virginia which studies MRI's of breasts.
In explaining to the jury how to interpret breast implant MRI's, Dr. DeAngelis emphasized the importance of distinguishing a radial fold, which is normal, from a linguine sign, which is abnormal and indicates a rupture. Dr. DeAngelis opined that Defendant failed to meet the applicable standard of conduct for radiologists interpreting breast implant MRI's because Defendant concluded that linguine signs were present in Plaintiff's MRI's, indicating a rupture, when in fact no linguine signs and only radial folds were present.
Construing this evidence most strongly in favor of Plaintiff, we conclude that the evidence presented is sufficient to demonstrate that Dr. DeAngelis was familiar with the standard of conduct applicable to the duty of care owed by radiologists who interpret breast implant MRI's. At a minimum, reasonable minds might reach different conclusions on that issue., Defendant next asserts that Plaintiff failed to demonstrate that her injuries were proximately caused by Defendant's alleged negligence in misinterpreting Plaintiff's MRI's. According to Defendant, Plaintiff's own physician, Dr. Percy, was committed to removing Plaintiff's breast implants regardless of their condition or Defendant's interpretation of the MRI's. We disagree.
Dr. Percy's testimony demonstrates that he concluded it was necessary to remove Plaintiff's silicone breast implants and replace them with saline implants because Dr Gregg had reported that Mrs. Wurts' MRI's showed that her silicone implants likely had ruptured. Dr. Percy subsequently performed a second surgery because of complications that developed from Mrs. Wurts' first surgery. Defendant did not argue as a basis for his motion for directed verdict any intervening or superceding negligence on the part of Dr. Percy. Once again, construing this evidence most strongly in favor of Plaintiff, we believe the evidence is sufficient to show that Defendant's alleged negligence proximately caused Plaintiff's injuries. At a minimum reasonable minds could reach different conclusions on that issue.
Finally, Defendant argues that, with respect to the issue of damages, Plaintiff failed to demonstrate that her ongoing neck and shoulder pain were caused by the surgeries occasioned by Defendant's alleged negligence in misinterpreting Plaintiff's MRI's. Once again, we disagree. Plaintiff testified about the surgery to remove her silicone breast implants following her MRI's, the complications which then developed, her subsequent surgery, her post-surgical restrictions on her daily activities, and the problems she continues to experience with weight imbalance, posture, and neck/shoulder pain after being left with only one breast implant, on her right side. Construing this evidence in a light most favorable to Plaintiff, we conclude that a jury could reasonably infer from this evidence, without expert opinion, that the discomfort Plaintiff experiences at or near the site of her surgeries proximately results from those surgeries which Dr. Percy performed as a consequence of Defendant's alleged diagnostic negligence., Defendant's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR
THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THERE WAS NOT COMPETENT CREDIBLE EVIDENCE SUPPORTING THE VERDICT AGAINST DR. GREGG ON THE ISSUES OF STANDARD OF CARE, PROXIMATE CAUSE AND DAMAGES., Defendant argues that this record fails to contain competent, credible evidence to support some of the essential elements of Plaintiff's medical malpractice claim; specifically, the applicable standard of care, proximate causation, and damages.
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. See also Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
Our review of the evidence presented in this case convinces us that there is competent, credible evidence to support each of the elements required by law for a medical malpractice claim as set out in Bruni v. Tatsumi, supra, including the applicable standard of conduct, proximate causation, and damages, which we discussed in the preceding assignment of error., Defendant's fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR
THE JURY'S VERDICT WAS EXCESSIVE AND THE SUBJECT OF PASSION AND PREJUDICE., Defendant argues that the jury's award of damages in the amount of $215,000 in favor of Plaintiff, Shirley Wurts, is excessive and the result of passion and prejudice. We disagree.
With respect to damage awards, an appellate court should not substitute its judgment for that of the trial court or the jury, because damages are an issue for the jury's determination. Jeannev. Hawkes Hospital of Mt. Carmel (1991), 74 Ohio App.3d 246. A jury's award should not be set aside unless the damages awarded are so excessive as to appear to have been the product of passion or prejudice. Lavender v. Justice (January 25, 1994), Pike App. No. 511, unreported.
In determining whether an award of damages was influenced by passion or prejudice, a reviewing court should consider the amount of the award, whether incompetent evidence influenced the award, any misconduct by the court or counsel, and any other action which might have swayed the jury in their determination of the amount of damages that should be awarded. Lavender v. Justice, supra.
It is conceded that neither silicone implant had ruptured. Therefore, Dr. Gregg was obviously mistaken when he diagnosed that a rupture was "likely." Not all medical errors result from negligence, however, and in this instance the question was a close one. The jury heard all the evidence relevant to his alleged negligence, and it found Dr. Gregg negligent. We are not prepared to set aside that conclusion on the basis of a different view of the facts.
As a result of Defendant's negligence, Plaintiff underwent two unnecessary surgeries. She experienced post-operative limitations on her daily living activities, and she has been left with a disfigured left breast which has no implant, resulting in ongoing problems with weight imbalance, posture, and neck and shoulder pain.
Upon reviewing this record, we cannot find that the jury's verdict was the product of passion or prejudice. Moreover, we conclude that the jury's damage award is not grossly disproportionate to any reasonable view of the evidence. To the contrary, we believe the damage award is relatively modest in view of the pain, disfigurement, and limitations plaintiff has suffered and will continue to suffer as a result of the negligence which the jury found., Defendant's sixth assignment of error is overruled.
Having overruled the assignments of error presented, we will affirm the judgment from which this appeal was taken.
WOLFF, J. and YOUNG, J., concur.
Copies mailed to:
Richard M. Hunt, Esq.
Thomas J. Replogle, Esq.
Robert F. Cowdrey, Esq.
HON. DAVID G. SUNDERLAND
[1] Dr. DeAngelis actually referred to the applicable "standard of care," which confuses the two component parts of the negligence question. For a discussion of those matters, see Berdyck v. Shinde (1993), 66 Ohio St.3d 573, 578-579. For purposes of the error assigned, however, the distinction is not significant.